[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 524 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 526 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 527 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 528 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 529 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 530 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 531 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 533 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 534 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 535 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 536 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 537 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 538 
After a careful examination of the numerous authorities cited upon the points of the attorney for the appellant; respect for the able counsel who submitted them, and a belief in his sincerity in the positions which he has assumed, *Page 539 
has alone induced me to give any written opinion in this case, so thoroughly am I convinced that every principle upon which the appellant seeks to recover, has been decided against him in the courts of this state. The great error into which he has fallen, is that, taking "it as conceded that the common law has "been recognized and adopted as the law of this state, and that "the rights of a subject of the British crown, and a citizen of "the state of New-York in navigable waters, are at common "law the same; that the power of the sovereign here in respect "to the alienation of these rights has the same qualifications as "is attached to the power of the English crown." The case ofLansing v. Smith, decided in the supreme court, and reported in 8 Cowen, 146, and afterwards affirmed in the court of errors, (4 Wendell, 9,) has laid down an entirely different doctrine. I quote from the opinion of the chancellor, which was adopted by the court of errors, to show that the sovereign power of the people of this state over these rights, is moreextensive than that of the English crown, or the king, as each of these terms is used in the points submitted, though intending to mean, as I suppose, the same thing. "The people of this state, as the "successor of its former sovereign, are entitled to all the rights "which formerly belonged to the king by his prerogative. "Through the medium of their legislature, they may exercise "all the powers, which, previous to the revolution, could have "been exercised, either by the king alone, or by himin conjunction "with his parliament: subject only to those restrictions "which have been imposed by the constitution of this state "or of the United States. By the common law, the king, as "parens patriæ, owned the soil under all the navigable rivers, "or arms of the sea, where the tide regularly ebbs and flows, "including the shore or bank to high water mark. (Constable's"case, 5 Coke's R. 106; Davies' R. 152, 153; Rex. v.Smith, "Doug. R. 425.) He held these rights, not for his own benefit, "but for the benefit of his subjects at large; who were entitled "to the free use of the sea, and all tide water, for the "purposes of navigation, fishing, c. subject to such regulations *Page 540 
"and restrictions as the crown or the parliament might prescribe. "By magna charta, and many subsequent statutes, the "powers of the king are limited, and he cannot now deprive "his subjects of their rights, by granting the public navigable "waters to individuals. But there can be no doubt of the right "of parliament in England, or the legislature of this state, to "make such grants, when they do not interfere with the vested "rights of particular individuals." Authorities are cited by the appellant's counsel to show, that the king cannot make anygrants in derogation of these rights; and having established, as he supposes, that proposition, he then deduces from it another, viz. that a riparian proprietor enjoys rights in navigable waters that are not common to all the people of the state. Proceeding upon this erroneous supposition, he then assumes that the common law of England and that of this country is the same; (to wit, the power of the king, and the legislature of this state,) and from it deduces two propositions:
First. That every citizen has a right of navigation and fishing in navigable waters, to be exercised at their free will for private gain or pleasure.
Second. That this right cannot be destroyed by the sovereign power, unless its destruction is essential to the public welfare.
Having cited sufficient from the opinion of the chancellor to show that the power of the king in England, and that of the legislature of this state over those rights are entirely different, I will proceed to show how widely differentprinciples are deducible from different premises. And here I will allow the chancellor to speak, instead of myself, in the case before cited: "The right to navigate the public waters of the state, and to "fish therein, and the right to use the public highways, are all "public rights, belonging to the people at large. They are not "the private unalienable rights of each individual. Hence, "the legislature, as the representatives of the public, may restrict "and regulate the exercise of those rights in such manner "as may be deemed most beneficial to the public at large."
If I understand this, it is precisely the reverse of the appellant's *Page 541 
first proposition, for that asserts that his right is a private
one, to be exercised at his free will for private gain or pleasure; whereas, this case decides that it is a public right, not private; and that the legislature may restrict andregulate the exercise of it. But let me proceed with the opinion of the chancellor as to the extent of this right, as I have not designed, by any reasoning of mine, to demonstrate what it is, but to show that it has been settled by the adjudications of our courts. He says: "The bank of the Hudson between high and low water-mark, "belonged to the people, andhe [meaning the riparian proprietor] "had no better right to the use of it than any other person. "If he built on it or erected a wharf there, it would be a purpresture "which the legislature might direct to be demolished, "or to be seized, for the use of the public. (Harg. Law Tr. "85.) Or the legislature might authorize erections in front "thereof, as in the case of Smith's wharf on the Thames." (Rex v. Smith, Doug. 425.) This certainly takes quite a different view of the rights of a riparian owner from that which the appellant's counsel has taken, and seems to me to take away the whole foundation and substance of his proposition. I might stop here with the remark that this denies to the appellant any private right to the waters where the respondents' road was constructed, and if so, he could not have any claim for damages; but as the appellant's counsel has endeavored to satisfy the court that he has some rightspeculiar to himself, for which he is entitled to compensation, I will examine them for a moment. Among them he enumerates that of the exclusive right to embark from his own land with all kinds of craft; or to use the natural shore down to high water-mark as a landing place; to draw nets to his shore, c. These exclusive rights do not belong to the appellant because his lands adjoin navigable waters, but because no other man can enjoy them, for the reason, that if he enters on the appellant's land without his permission, whether his object be to draw nets to shore, or any other object in doing so, he becomes a trespasser. The water being in front of his land, does not alter these rights; but every other citizen has as *Page 542 
good right as himself to fish in the water opposite his lands, provided he does not draw his nets upon the appellant's premises. So also may any other citizen navigate the same waters as well as the appellant, provided he makes no entry upon his land. I can see nothing peculiar in these rights which are not possessed by any other person living a thousand miles from navigable waters, as I suppose he would have the right to the exclusive possession of his land, to come and go to and from it with teams and produce; and should any other person attempt to exercise the same right without the permission of the owner, he would be a trespasser. In the case of Lansing v. Smith, the plaintiff insisted that he had sustained damages peculiar to himself in addition to that which he sustained in common with the public; and I will quote from the opinion of the learned judge in that case: "It must be conceded," he says, "that there is nothing in "the plaintiff's case, so far as he complains of the pier andthe "sloop lock, to distinguish it from that of every other owner of "a wharf within the basin; all the proprietors of docks above "the temporary bridges have sustained an equal injury with "the plaintiff in consequence of their erection. The injnry, therefore, "for which the plaintiff seeks remuneration, is notpeculiar "to himself. It has been equally felt by hundreds of others "whose property is similarly situated." The court then say, that in such a case, when the injury sustained is remote and consequential, it is damnum absque injuria, and is to be borne as a part of the price to be paid for the advantage of the social condition. The same doctrine has been subsequently laid down by the court in the case of Radcliffe's Executors v. The Mayor,c. of Brooklyn, (4 Comst. 195.) The case of Lansing v.Smith was on all fours with this, with the exception, that in some of its features it was stronger for the plaintiff, to wit: the plaintiff contended, and with some plausibility, that the grant of the land commissioner to the owners of the wharvesadmitted their right to the lands under water, and excluded
the power of the state to reconvey to others. The facts in other respects were exceedingly like those of this case. The legislature *Page 543 
authorized the construction of a pier called the Albany basin,directly in front of docks which had been erected by individuals under the authority of the commissioners of the land office, by which the said wharves were rendered nearly valueless, as the communication with them was almost wholly cut off; and still the court held that such owners could not recover for such consequential damages.
The second proposition virtually concedes that this right of the appellant can be destroyed by the sovereign power, provided its destruction is essential to the public welfare. It seems to me, that this concedes the whole ground, and leaves nothing for the plaintiff to stand upon in order to sustain his right to recover in this case. Who is to judge of the necessity for such destruction, except the sovereign power, acting through the legislature, which represents it? It cannot be possible that such necessity is to be left to be judged of by the circumstances of each particular case. If so, a law suit would be the certain consequence of every exercise of this right by the sovereign power. But after all, he concedes no more by this, than was settled in the case of Lansing v. Smith. In that case, the court say, "If the act be unconstitutional, it must be on the "ground that the plaintiff had either at common law, as the "owner of the adjacent soil, or by virtue of the patent from the "state to Quackenboss, for land under water, opposite to the "shore, a claim to the natural flow of the river, with whichthe "state had no right to interfere by any erections in thebed of "the river or in any other manner. This proposition appears to "the court too extravagant to be seriously entertained. It denies "to the state the power of improving the navigation of the river "by dams, or any other erections, which must affect the natural "flow of the stream, without the consent of all the proprietors of "the adjacent shore, within the remotest limits which may be "affected by the operation. Every new dock that is erected, "partially diverts the natural course of the stream, and upon "the principles contended for by the plaintiff, violates the rights "of all the proprietors of docks below it. The right of the *Page 544 
"plaintiff to navigate to and from the dock is not denied. All "that is contended for on the part of the defendants is, that the "mode in which that right is to be exercised, is subject to be "controlled and regulated by the legislature as in their judgment "the interest and convenience of the public may require." "This," the court say, "is founded upon the principle, that the "general good is to prevail over partial individual convenience." I will not pursue this subject farther, for it seems to me, if any principle was ever settled, this case settles the principle, that the legislature has the right to regulate and control all navigable waters within the state, as in their judgment the interest and convenience of the public may require.
It is not upon the ground alone of improving the navigation of such waters, but on the ground that they possess the power, and can exercise it for any public improvement, such as the construction of a railroad, or the laying out of a public highway.
The judgment of the supreme court should be affirmed.
RUGGLES, Ch. J. and JOHNSON, GARDINER and WELLES, Js. concurred in the foregoing opinion.