Chapman and another vs. The Oshkosh & Mississippi River R. R. Co.

CHAPMAN and another vs. THE OSHKOSH & MISSISSIPPI RIVER RAILROAD COMPANY.

33 629
90 399

33 629
57 LRA 937n

EMINENT DOMAIN: RAILROAD: RIGHT OF WAY. (1) *Damage by railway to mill property, the rule stated.* (2) *Injury to riparian rights by R. R. bridge and embankment.* (3) *Effect of public easement in street fronting property taken.* (4) *Special benefits to be deducted.* (5) *Remote or possible injuries not considered.*
INSTRUCTIONS TO JURY. (6) *Not error to refuse especial instructions included in general charge.*

1. Plaintiffs owned certain city lots upon which was a saw mill, and also owned certain other lots fronting on Pine Street, which were accessible from the mill by means of public streets, and were used by them in connection with their mill for storing lumber there manufactured. Defendant took for its road a strip of said Pine Street lots, which was included in said street. *Held*, that plaintiffs' damages for the taking of said strip included, not only any diminution in the market value of the Pine Street lots, but also the depreciation in value of the mill property in consequence of such property being rendered unsafe for the storage of lumber by the building of the railroad thereon.

2. Plaintiffs owned several lots fronting on a navigable river, and were accustomed to use their river front in hitching logs, putting in rafts and shipping lumber. Defendant, by permission of the legislature, built a bridge over said river, and an embankment. *Held*, that plaintiffs are entitled to recover for any injury to their riparian rights caused by such bridge and embankment.

3. It was error to refuse instructions asked by defendant, to the effect that plaintiffs, before the taking of the strip in question for defendant's road, had no right to the exclusive use and occupation of any part of Pine Street, in front of their lots, or to render any part thereof impassable by piling wood and lumber thereon; and the error is not cured by a statement in the general charge that the jury might " take into account the fact that such strip was incumbered by the easement of a street."

4. There was no error in directing the jury to *deduct* from the damages which they might allow for injuries to plaintiffs' lots contiguous to the land taken, the value of any *special benefits* which these lots received from the construction of defendant's road.

5. Nor was there any error in instructing the jury that plaintiffs were not entitled to compensation for any *remote* or *possible* injuries which

might result from the building of defendant's road, but only for such as would result from the construction thereof in *a suitable manner, with proper crossings.*

6. There is no error in refusing to give correct specific instructions asked by a party, when they are given in the general charge so fully and clearly that a refusal to give them again can work no injury.

APPEAL from the Circuit Court for *Winnebago* County.

Plaintiffs were awarded $600 damages by commissioners, for the right of way taken by defendant for its railway over the west half of Pine Street in front of lot 10, block O, and in front of lots 11, 12 and 13 in block A, in the western addition to the First ward in the city of Oshkosh. From this award they appealed to the circuit court. It was shown by plaintiffs that they owned lot O in block D, and lots 2, 3 and 9 in block O, and lots 4 to 19, inclusive, in block M, in addition to the lots above named; that they occupied said lots 2 and 3 (which did not front on Pine Street) for their saw mill, but that they used all the Pine Street lots above named for piling and storing lumber in connection with their mill business; that considering the property as an entirety for mill purposes, it was injured by the railroad bridge by splitting the front in two, and by the embankment so encroaching upon the street as to prevent approach to the Pine Street lots; that lots 9 and 10 in block O were entirely cut off, and lot O in block D was materially interfered with; that the embankment precluded the approach to these lots on Pine Street, and prevented passing from said lot O to said lots 9 and 10 by any ordinary means for business purposes; and that the railroad also precluded approach to lots 11, 12 and 13 in block N; that said lots O, 9 and 10 fronted on the Fox River, a navigable stream, and the building of the railroad bridge injured the river front of those lots by preventing the laying in of rafts of logs, or reaching it with boats for shipping lumber, for both which purposes it had been used by plaintiffs; and that the value of all plaintiffs' property in the vicinity used for mill purposes was materially injured, it being

## JUNE TERM, 1873. 631

Chapman and another vs. The Oshkosh & Mississippi River R. R. Co.

necessary to use it as a whole and undivided, and the value of the rear lots depending upon their access to the frontage.

*E. M. Danforth*, one of the plaintiffs, was asked on direct examination the following questions: " What injury, if any, had accrued to lots 2 and 3, on which the mill is situated, by reason of the condemnation of the land in front of lots 10, 11, 12 and 13 ?" Defendant objected, on the ground that lots 2 and 3 were not so closely connected with the property condemned as to entitle plaintiffs to claim damages for any injury to them; but the objection was overruled. *Answer:* " The injury results in interfering with the usual legitimate prosecution of the busi ness we have been conducting there, by preventing our piling the products of our mill in the most secure place, as we consider the front, and depriving us of the only hitching-ground of the few extra logs we had on the river, and depriving us of a chance of shipping by water, which we have done a good deal at in the prosecution of our business. Lots 2 and 3, before the railroad was there, were worth, with mill, $10,000 ; afterwards, $1,500 less." Josiah Danforth testified for plaintiffs that the value of the lots was dependent upon the value of the land itself and of the river frontage. On cross examination he testified that if the street were to be kept open and used as a street, the land would not be worth "much of anything." Hunneman, a witness for plaintiffs, estimated the entire damage to plaintiffs on account of the condemnation at about $2,500, basing his estimate upon the supposition that the street might be occupied for general purposes connected with the mill.

Defendant introduced several witnesses, whose estimates of damages varied in amount from nothing up to $1,000.

The court instructed the jury, generally, that in estimating the damages, they must first determine the market value of the land actually taken, taking into account its location and situation, and the fact that it was incumbered by the easement of the street, and that plaintiffs were entitled to recover this actual market value, without any reduction for the benefit

resulting from the construction of the road; that they were also entitled to recover such actual and direct damages as were sustained by their lands contiguous to that actually taken, but not to recover for remote and speculative damages; that to determine such damages, they might inquire what was the market value of the land, *without* the railroad there, at the time of its condemnation, and what would be its market value *with* the railroad; that in determining these market values, the jury should consider the use of the river front and the use of the property; that the jury should deduct from the damages sustained by the lots contiguous to the land actually taken, such benefits as were received by those lots in consequence of the construction of the road, peculiar and special to this property and not enjoyed in common with the land of other persons not taken. The court refused the following, among other instructions asked by defendant:

" The jury are to estimate and assess the plaintiff's damages in view of the fact that Pine Street is a public street of the city of Oshkosh, and that the plaintiffs, before condemnation of part of the same, had no right to the exclusive use and occupation of any part of it. The appellants had no right, before the location of the railroad along Pine Street, to use the lots in such manner as to exclude public travel from any part of it. Pine Street is a public street, and the public had the right to travel over any and every part of it in the same manner as over any other street in the city of Oshkosh. The plaintiffs had no right, before or after the location of the railroad, to render any part of Pine Street in front of their lots impassable by piling wood or lumber therein."

Verdict for the plaintiffs, for $1,800 damages, and judgment thereon, from which defendant appealed.

*Moses Hooper*, for appellant, argued, *inter alia*, that the court erred in permitting evidence of the damages to lots 2 and 3, and the mill thereon, and that the mere fact of their territorial contact with the Pine Street lots was not sufficient to warrant

the jury in allowing damages on account of said lots 2 and 3. The court also erred in refusing the 4th, 5th, 6th and 7th instructions asked by defendant, and the jury were therefore in danger of assessing damages on an erroneous basis, which was sufficient ground for reversing the judgment. To a jury, taking the law from the court, the expression used in the general charge, "incumbered by the easement as a street," conveys a very imperfect and indefinite idea of what this burden really was. Refusal to give pertinent particular instructions is error, though the general instruction upon the subject be correct. *Rogers v. Brightman*, 10 Wis., 63, 64. The plaintiffs had no property in the river front which the legislature could not take away for the use of commerce and navigation, without compensation. 1 Redfield on Railways, 232, 323, 325, 326; 1 U. S. Statutes at Large, 466; Angell on Highways, sec. 41; *Wis. Riv. Imp. Co., v. Lyons*, 30 Wis., 61; *Parker v. Mill Dam Co.*, 20 Me., 353.

*Felker & Weisbrod*, for respondent, contended that the damages sustained must be estimated with reference to the purposes for which the land was acquired and used by the owner. The mill lots 2 and 3 were connected with the other lots and used in connection therewith, and though separated from lots' 9 and 10 on the river front, they were connected with them in the rear, and the property was used as a whole. Hence the damages to these lots was a proper subject of estimation. *Welch v. M. & St. P. R. Co.*, 27 Wis., 108. To the point that riparian rights are valuable property, and those enjoyed in subjection to the rights of the public can not be destroyed or impaired without compensation, counsel cited *Yates v. Milwaukee*, 10 Wal., 504; *Bowman v. Wathen*, 2 McLean, 376. The state has no greater right to interfere with private property along a navigable river, without compensation, in aid of a railway or canal, than for a highway upon the land. 18 Mich., 196.

COLE, J. The principal exceptions arising upon this record

634    SUPREME COURT OF WISCONSIN,

Chapman and another vs. The Oshkosh & Mississippi River R. R. Co.

may be conveniently considered in connection with the following questions :

1. Were the plaintiffs entitled to recover any damages which might be caused to their mill property on lots 2 and 3, and which resulted by reason of the condemnation of the Pine Street lots?

2. Were they entitled to recover such damages as they could show that they had sustained as riparian proprietors of lots on Fox River, in consequence of the breakage of their river front by the erection of the railroad bridge across Fox River and the construction of the embankment?

3. What damages, if any, were they entitled to recover for the location of the railway track in and along the west side of Pine Street, directly in front of their lots abutting thereon?

It is believed that these constitute the principal claims on the part of the plaintiffs for damages done to their property by the location of the track of the company in Pine Street, the construction of the embankment, and the erection of its bridge across Fox River, in the manner these several things were done.

In respect to the first head of damages, it seems to us very clear that the plaintiffs were entitled to compensation for any injuries done to their mill property situated on lots 2 and 3 by reason of the condemnation of the land in front of their lots on Pine Street. It is true, those lots were not directly contiguous to Pine Street, but the plaintiffs owned lots along Pine and Marion Streets, all of which were accessible from the mill through those streets. And it appeared from the evidence that the lots on Pine Street were used by the plaintiffs in connection with their saw mill, for the purpose of the storage of lumber manufactured at their mill. This being the case, the lots upon Pine Street being necessary for the enjoyment of the mill property, and used in connection with it, if the mill property was depreciated in value or injured in consequence of those lots on Pine Street being less safe for the storage of lumber, this was a proper matter to be considered in estimating the

damages the plaintiffs sustained by the location of the track. It seems to us that it was just as legitimate a subject for compensation as though the saw-mill had been situated on some one of the lots on Pine Street, and the lots on that street had been inclosed in the mill-yard for the storage of lumber manufactured at the mill. The mill would be of little value without some safe and convenient place to stow lumber; and as the Pine Street lots were used in connection with the mill for that purpose, the injury done to the mill property in consequence of being deprived of the advantageous use of those lots was a proper element in estimating the plaintiffs' damages. The case of *Welch v. The Milwaukee & St. Paul R'y Co.*, 27 Wis., 108, is a direct authority upon this question, and shows that such damages may be recovered.

But it is said the plaintiffs had no right to compensation for injuries done to the mill property by being deprived of the use of the Pine Street lots in connection with the mill for the purpose of storage, and also to recover damages done to the Pine Street lots as a separate mill site. I am unable to find upon the record evidence that the plaintiffs made any distinct claim for damages on the latter ground. Some of the witnesses, in stating the elements which made up the damages done to the Pine Street lots, say that the location of the railway track in that street destroyed the use of those lots for a mill site. Of course, so far as those lots were concerned, the question was, how much they had been lessened in value in consequence of the location of the road in Pine Street. All remote and indefinite damages were excluded, but the direct depreciation of those lots in the market was a proper measure of compensation for the property actually taken. And as we understand the claim of the plaintiffs under this head, they only insisted that they should be allowed the value of the land taken, and any depreciation in the value of the adjacent lots resulting from such taking, and also the injury done to the mill property by being deprived of the use of the Pine Street lots in connection with their mill.

This ordinarily would be the true rule of damages; but, as we shall see in a subsequent part of this opinion, it required qualification on account of the burden already imposed upon the lots by the existence of a public street.

Under the second claim or head, we think the plaintiffs were entitled to recover such damages as they had sustained as riparian owners in consequence of the interruption or breakage of their river front by the erection of the railway bridge. It appears that in consequence of the erection of this bridge over Fox River, lot O in block D is completely separated on the river from lots 9 and 10 in block O. The plaintiffs had been accustomed, in the transaction of their lumbering business, to hitch logs, put in rafts, and ship lumber, in front of these lots; and evidence was offered which tended to prove that the bridge and embankment would materially interfere with the use of the river front for these purposes. And the plaintiffs claimed that these riparian rights were property, and that they were entitled to compensation for being deprived of them by the company. The circuit court in effect charged in favor of this claim, by directing the jury that the use of the river front by the plaintiffs was a proper subject to be considered by them in estimating the damages. Was this a correct view of the law applicable to the facts of the case? We have already intimated that in our opinion it was. It is true, the cases upon this question are in conflict; but we adopt that rule which seems most in harmony with the principles of justice and equity.

Fox River, where the railway bridge is built, is a navigable stream, and the bridge was created under a charter which authorized the structure. And it is said that the plaintiffs had no property in the river front, which the legislature could not destroy without making compensation therefor. The plaintiffs, it is said, own the fee in the soil only to ordinary high water mark, and beyond this line they had no private right or property in the waters of the river, or in the shore between high

and low water mark, which entitled them to recover damages, even if their river frontage is cut off or destroyed. There are authorities which support this position. *Gould v. The Hudson R'y*, 6 N. Y., 522; *Tomlin v. The Dubuque, Bellevue and Miss. R'y*, 32 Iowa, 106. But it seems to us that the doctrine of these cases is unsound. We prefer the rule laid down by Mr. Justice McLEAN in *Bowman's Devisees v. Wathen*, where, speaking of riparian rights on navigable streams, he says: "On navigable streams, the riparian right, we suppose, cannot extend beyond high water mark. For certain purposes, such as the erection of wharfs, and other structures, for the convenience of commerce, and which do not obstruct the navigation of the river, it may be exercised beyond this limit. But in the present case this inquiry is not important. It is enough to know that the riparian right on the Ohio river extends to the water, and that no supervening right over any part of this space can be exercised or maintained without the consent of the proprietor. He has the right of fishing, of ferry, and every other right which is properly appurtenant to the soil. And he holds every one of these rights by as sacred a tenure as he holds the land from which they emanate. The state cannot, either directly or indirectly, divest him of any one of those rights, except by a constitutional exercise of the power to appropriate private property to public purposes. And any act of the state, short of such an appropriation, which attempts to transfer any of these rights to another, without the consent of the proprietor, is inoperative and void." 2 McLean's R., 376–382. In the case of *Duke of Buccleuch v. The Metropolitan Board of Works*, Law Reports, 5 House of Lords, 418 (same case in 2 Moak's Eng. R., 448), substantially the same view was taken of the rights of a riparian proprietor — that such rights were valuable, and that a party deprived of them was entitled to recover damages for their loss. It seems to us that it is unreasonable to deprive the plaintiffs of the business facilities which the river front affords for shipping lumber, and landing logs and boats,

without compensating them for the loss of such advantages. Such riparian rights frequently constitute the chief value of river property, and to deprive an owner of them without compensation is to despoil him of most valuable property. We therefore think the plaintiffs were entitled to be compensated for the loss they sustained by the destruction or breakage of their river frontage by the erection of the railway bridge and embankment. See *Arimond v. The Green Bay & Miss. Canal Co.*, 31 Wis., 316; and *Railroad Company v. Schurmeir*, 7 Wallace, 272. The fact that the city of Oshkosh had the right under its charter to build a highway bridge from the point where Pine street struck the river on one side to a point where a street came to the river on the other side, does not affect these riparian rights or the plaintiffs' claim for compensation for their destruction.

In regard to the third head of damages, we think the instructions of the defendant upon that point should have been given. The difference between the actual value of the strip taken for the use of the company without such easement, and as it was burdened with the easement, did not furnish the correct rule. The plaintiffs owned the fee of these lots to the center of the street, subject to the public easement. Why should they be paid the entire value of this strip as though no such burden were already imposed upon it? The jury should have estimated their damages in view of the fact that Pine Street was a public street, and that the plaintiffs, before its condemnation by the company, had no right to the exclusive use and occupation of the same for a lumber yard. The plaintiffs had the right, like the public, to use Pine Street for the purposes of a highway, but had no right to use any part of it for a lumber or wood yard, to the exclusion of public travel. See *Hegar v. The Chicago & Northwestern R'y*, 26 Wis., 624; *Hobart v. The Milwaukee City R'y*, 27 id., 194. The jury may have assessed the plaintiffs' damages on the basis that they had the right to use the strip taken for storing wood and lumber upon,

## JUNE TERM, 1873. 639

Chapman and another vs. The Oshkosh & Mississippi River R. R. Co.

whereas it is clear that they had no such right. All the damages they were entitled to recover was for the additional burden imposed upon this strip, and any special injuries they might sustain by reason of the embankment, which rendered access to their adjoining lots less safe and convenient. It is true, the court, in its general charge, told the jury that they might take into account the fact that the strip actually taken was encumbered by the easement as a street; but this did not cure the error in refusing to give the fourth, fifth, sixth and seventh requests on that subject.

The court directed the jury to deduct from the damages which they might allow for injuries to the contiguous lots, any special benefits which they might find those lots received from the construction of the road. Some criticism is made on this portion of the charge, but it seems to us that it is substantially correct. Such benefits as were peculiar to the property of the plaintiffs were to be set off against consequential injuries arising from the construction of the road. The court directed the jury that the plaintiffs were not entitled to compensation for any remote or possible injuries which might result from the building of the roadway, but only such as would result from the construction of the road in a suitable manner with proper crossings.

We do not think there is anything in the other exceptions requiring any special comment. A number of the instructions asked on the part of the defendant were correct as propositions of law; but the court so clearly and fully embraced them in the general charge, that a refusal to give them again could work no injury. But the refusal to give those in regard to the proper basis for assessing damages for laying the railway track in Pine Street, and the right of the plaintiffs to occupy and use that street to the exclusion of public travel, might have seriously prejudiced the defendant. And it is for the error in not giving the instructions upon that subject, that there must be a new trial.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial awarded.