HARRIET S. RUMSEY et al., Respondents, *v.* THE NEW YORK AND NEW ENGLAND RAILROAD COMPANY, Appellant.

The owner of land bounded upon a navigable river has property rights therein, *i. e.,* the right of access to the navigable part of the stream and the right to construct a landing or wharf, and where a railroad company, although acting under legislative authority, has constructed its road across the water front of such owner and thus has deprived him of access to the navigable part of the stream, unless he has granted the right or it has been obtained by eminent domain, he is entitled to recover his damages.

*It seems,* however, this rule may not be extended so as to interfere with the right of the state to improve the navigation of the river, or with the power of congress to regulate commerce.

The proper measure of damages in such case is the diminished rental or usable value of the property for the purpose it was used for before the building of defendant's road; not what it would have been if the land had been put to some other use or other structures had been placed upon it.

In an action by plaintiffs, who were the owners of certain uplands on the Hudson river, to recover damages sustained by the construction by defendant in 1880 of a railroad across their water front, which cut off their access to the water, it appeared that the lands under water in front of plaintiffs' premises were not granted to them until in March, 1885. *Held,* that plaintiffs' right to recover was not confined to the period since such grant; but that they were entitled to damages for interference with their prior property rights in the stream as riparian owners.

*Gould* v. *H. R. R. R. Co.* (6 N. Y. 522), held to have been overruled.

*Lansing* v. *Smith* (8 Cow. 146; 4 Wend. 9); *Stevens* v. *P. & N. R. R. Co.* (34 N. J. L. 532); *Buccleuch* v. *Met. Bd. of Works* (L. R. [5 Exch.] 221), distinguished.

Plaintiffs' premises had formerly been used as a brick yard, and the river front for shipping brick and other purposes connected with brick making. Some years before the construction of defendant's road and the embankment along plaintiffs' front, such use of their premises had been abandoned. *Held,* that plaintiffs' damages could not properly be based upon the rental or usable value of their property as a brick yard.

Upon the trial plaintiffs' proof of damages consisted entirely of the opinions of witnesses as to the rental value of the land without defendant's structure. *Held,* that such proof was competent, but did not establish the legal measure of damages; that it should also have been shown what was the rental or usable value of the land as it was with such structure.

Defendant offered to prove the additional cost of shipping brick upon the river rendered necessary by the construction of defendant's embankment. This was excluded upon objection by plaintiffs. *Held,* error; that under plaintiffs' theory of damages such additional cost was an important element of the damage sustained, and defendant was entitled to prove the same in answer to plaintiffs' claim.

(Argued March 18, 1892; decided April 12, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 28, 1891, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial without a jury.

This action was brought by plaintiffs to recover damages for obstructing access from their lands to the waters of the Hudson river by the building of a railroad in front of them by defendant and for a removal of said obstruction so as to enable them to use a right of way to said river.

The facts, so far as material, are stated in the opinion.

, *W. C. Anthony* for appellant. The title to lands under water is absolute — especially along the Hudson. (*People* v. *N. Y. & S. I. F. Co.,* 68 N. Y. 71; *People* v. *Tibbets,* 19 id. 523; *People* v. *Canal Appraisers,* 33 id. 461; *Smith* v. *City of Rochester,* 92 id. 483; *Lansing* v. *Smith,* 4 Wend. 10; *Livingston* v. *VanIngen,* 9 Johns. 506; *Canal Appraisers* v. *People,* 17 Wend. 571.) The measure of damages adopted was erroneous. (*Tallman* v. *M. E. R. Co.,* 121 N. Y. 119;

*Greene* v. *N. Y. C. & H. R. R. R. Co.*, 65 How. Pr. 154; Wood on Nuisances, § 659.) The judgment appealed from is clearly erroneous in awarding the plaintiffs' damages for seven years prior to the commencement of this action. Six years was all that could be recovered for under any circumstances. (Wood on Nuisances, § 865; Buswell on Lim. § 217; *Baldwin* v. *Calkins*, 10 Wend. 167.) Defendant's is an interstate railway and carries the United States mail. The water grant to the plaintiffs could not give them any such rights or title as would enable them to disturb or remove such a railway and mail route, which had occupied these lands under water prior to the issuing of such water grant. (U. S. R. S. §§ 3964, 5263; Laws of 1850, chap. 283.) The recovery in this action covers a period of seven years — from January, 1881, to January, 1888 — at $1,500 per year. The plaintiffs obtained their water grant in March, 1885. Hence for the first four years and two months of such seven years they had no water grant. (*Gould* v. *H. R. R. R. Co.*, 6 N. Y. 522.) If these plaintiffs had any rights prior to their water grant, Gould certainly had the same; and such rights were a species of property which could not be taken without compensation. (*Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *Abendroth* v. *M. R. Co.*, 122 id. 1; *Stevens* v. *P. & N. R. R. Co.*, 34 N. J. L. 532; *Tomlin* v. *R. R. Co.*, 32 Iowa, 106.) There is a plain distinction between the rights of abutting owners in navigable waters and their rights in streets — even where the municipality owns the fee of the street. The title of the street is in trust, and qualified. (*Lahr* v. *M. E. R. R. Co.*, 104 N. Y. 268; *Kane* v. *N. Y. E. R. R. Co.*, 125 id. 164.)

*H. H. Hustis* for respondents. All the questions now raised in this case have been passed upon against the defendant. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 114 N. Y. 432; 34 N. Y. S. R. 454; 40 id. 583.)

O'BRIEN, J. This appeal involves two important questions: (1) The rule of damages applicable generally to such cases,

and (2) the right of the plaintiffs to recover anything for the period prior to March 3, 1885. The plaintiffs are, and for more than twenty years have been, the owners of about forty acres of land on the east bank of the Hudson river at Fishkill, bounded on the west by the river, and covering about one thousand feet of the river front. It also appears that on the 3d of March, 1885, the state, pursuant to a resolution of the commissioners of the land office, granted to the plaintiffs the lands under water adjacent to and in front of the uplands, from high-water mark westerly to the channel bank of the river, excepting therefrom the rights of the New York Central and Hudson River Railroad Company. This railroad, it seems, was constructed across the water front prior to and about the year 1854, and since that time the plaintiffs and their grantors have used a strip of land leading from the uplands through a culvert under the Hudson River railroad to the channel of the river, for loading vessels with brick made on the premises, and for all purposes connected with the manufacture of brick on the premises, with the consent of the Hudson River railroad, until such use was obstructed by the building of the defendants' road-bed. This was built in the years 1880 and 1881, outside of and nearly parallel with the road-bed of the Hudson River road, in front of the culvert above described, and along the whole river front of plaintiffs' land, without any right or authority from the plaintiffs or their grantors. The effect of this was to cut off the plaintiffs from access to the river from their lands. The plaintiffs' title to the uplands and the lands under water, where the defendant's road is built, has been determined in their favor by the decisions of this court. (*Rumsey* v. *N. Y. & N. E. Railroad Co.*, 114 N. Y. 423; 125 id. 681.)

The principles applicable to actions of an equitable character to restrain the operation and maintenance of such structures, when the facts amount to a continuing trespass against the rights of adjacent property-owners, are not involved, as the plaintiff has not adopted that form of obtaining relief. (*Galway* v. *Met. E. R. Co.*, 128 N. Y. 132; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98.)

In this action the plaintiffs seek to recover damages to their uplands, sustained by the act of the defendant in constructing its road-bed across the plaintiffs' water front, and thereby cutting off their access to the river, and such damages are claimed from the time of the construction of the railroad to the commencement of the action.    The court assessed the damages at $10,500.    This result was reached upon the theory that the use of the plaintiffs' premises for the purpose of a brick yard had been depreciated to that extent in consequence of the construction of the defendant's road.    At the same time the court found that the culvert, as a passage-way, was discontinued about the year 1875, and the dock at the westerly end of the culvert was allowed to go to decay, as was also the cause-way which connected the dock with the brick yard.    That the plaintiffs' lands had no buildings or machinery on them to fit them for use for brick-making purposes, and that they had been in this situation since the year 1875, and that the defendant had in no wise injured the plaintiffs' lands, except only to prevent or delay the sale of the clay thereon for brick-making purposes.    It appears, therefore, from these findings, that the use of the premises for brick making or as a brick yard had been discontinued six years before the defendant's road was built.    The plaintiffs asked to recover in this action only such damages as they have sustained up to the commencement of the action, by reason of the acts complained of.    As a basis for the estimate the land must be taken as it was used during the time embraced in the action.    It does not appear that the use of the premises as a brick yard was discontinued in consequence of the acts of the defendant, and that fact could not well be established, for it ceased to be used for such purpose long before the defendant's road was built.    The proper measure of damages in such a case is the diminished rental or usable value of the property as it was, in consequence of the loss by defendant's acts, of access to the river, in the manner enjoyed by the owner prior to the construction of the embankment across the water front by the defendant.    The plaintiffs cannot be permitted to prove or allowed to recover

damages that they might have sustained if they had put the property to some other use or placed other structures upon it. (*Tallman* v. *Met. Elevated Railroad Co.*, 121 N. Y. 119.)

The damages could not be based upon the rental or usable value of the property for a brickyard any more than they could be based upon their use for some other specific or particular purpose to which they were not in fact put by the owners. The question is what damages did the plaintiff in fact suffer by having the access to the river cut off, not what they might have suffered had the land been devoted to some particular use to which it was not put.

The proof of damages on the part of plaintiff consisted entirely of the opinions of witnesses as to the rental value of the land in the absence of the structure built by defendant. This proof was competent as far as it went, but it did not establish the legal measure of damages. It should also have been shown what was the rental or usable value of the premises as they were with the obstruction which interfered with the access to the river, as the difference in these two sums represented the actual loss caused by the defendants. The defendant offered to prove the additional cost of shipping brick to market upon the river rendered necessary by the construction of the embankment. This testimony was objected to by the plaintiffs and excluded by the court, to which the defendant excepted. This ruling was erroneous. The additional expense caused by the defendant's structure in the river of transporting brick, or any other product of the land, to market was an important element of the damages sustained, and the defendant should have been permitted to prove the fact in that regard, at least by way of answer to plaintiffs' theory of damages. The method adopted of establishing the plaintiffs' damages, therefore, demands a reversal of the judgment.

The plaintiffs were permitted to recover for more than four years prior to their grant of the land under water on the 3d of March, 1885. During this period the plaintiffs' rights were those of ordinary riparian owners on the banks of navigable rivers. They owned the uplands bounded by the river, and

as such owners had the right, under the statute, to apply to the commissioners of the land office for a grant of the land under water in front of their premises.  In this respect and on this branch of the case, the facts are identical with those in the case of *Gould* v. *Hudson River Railroad Company* (6 N. Y. 522).

If that case is to be followed, · the plaintiff cannot recover any damages prior to March 3, 1885.  It was there held that the owner of lands on the Hudson river has no private right or property in the waters or the shore between high and low-water mark and, therefore, is not entitled to compensation from a railroad company which, in pursuance of a grant from the legislature, constructs a railroad along the shore, between high and low-water mark, so as to cut off all communications between the land and the river otherwise than across the railroad.  It is believed that this proposition is not supported by any other judicial decision in this state, and if we were dealing with the question now as an original one, it would not be difficult to show that the judgment in that case was a departure from precedent and contrary to reason and justice.  It is no doubt true that even a single adjudication of this court, upon a question properly before it, is not to be questioned or disregarded except for the most cogent reasons, and then only in a case where it is plain that the judgment was the result of a mistaken view of the condition of the law applicable to the question.  But the doctrine of *stare decisis,* like almost every other legal rule, is not without its exceptions.  It does not apply to a case where it can be shown that the law has been misunderstood or misapplied, or where the former determination is evidently contrary to reason.  The authorities are abundant to show that in such cases it is the duty of courts to re-examine the question.  Chancellor .Kent, commenting upon the rule of *stare decisis,* said that more than a thousand cases could then be pointed out, in the English and American reports, which had been overruled, doubted or limited in their application  He added that " it is probable that the records of many of the courts of this country are replete with hasty

and crude decisions; and in such cases ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error." (1 Kent's Com. [13 ed.] 477; Broom's Legal Maxims, 153; *Gifford* v. *Livingston*, 2 Denio, 392; *Morse* v. *Goold*, 11 N. Y. 281; *Judson* v. *Gray*, id. 408.)

The *Gould* case has been frequently criticised and questioned and it is believed has never been fully acquiesced in by the courts or the profession as a decisive authority or a correct exposition of the law respecting the rights of riparian owners. (*Kane* v. *N. Y. E. R. R. Co.*, 125 N. Y. 184.)    The learned judge who gave the prevailing opinion in the case assumed, as the foundation of his argument, that the question was conclusively determined by the Supreme Court adverse to the plaintiff in *Lansing* v. *Smith* (8 Cowen, 146), subsequently affirmed in the Court of Errors. (4 Wend. 9.)    That case grew out of the construction of the canal basin at Albany, a public improvement to promote commerce and navigation, and the question was whether, as against such an improvement, the plaintiff's right to the use of his dock and water front, as he had enjoyed it before, was exclusive.    It may be conceded that the sovereign power in a work for the improvement of the navigation of a public river may incidentally interfere with the enjoyment and use of the water front by riparian owners, but the power to grant a private individual or corporation the right to cut such owner off entirely from communication with the stream, without compensation, is quite another and different question.    There is really no authority in *Lansing* v. *Smith* for the support of such a proposition.    On the contrary, as was pointed out by Judge Andrews in the *Kane* case (*supra*), that question was excluded from the discussion, as the chancellor who delivered the opinion was careful to say: " Whether the legislature could grant the right to any other person to build a wharf in front of the plaintiff's, so as to destroy his entirely, is a question which it is not necessary now to discuss."    It is not necessary to refer at much length

.to the numerous cases and the abundant learning to be found in the books respecting the rights of riparian owners. The authorities on the general subject are not all in harmony, and we are now concerned with but a single branch of an important and somewhat complicated subject, namely, the right of such owner, as against some other private interest, to have access to and enjoy the use of the highway.

It may be observed, however, that since the decision of the *Gould* case in 1852, this question and questions of a kindred nature have been elaborately examined, discussed and settled in this court, in our highest federal tribunal, in the court of last resort in England, and in the highest court of several of our sister states. The doctrine of that case has been repudiated or ignored in these decisions, and the rights of the proprietors of lands upon rivers and public highways determined upon principles more in accord with reason and justice. The long line of decisions in this court from the *Story* case (90 N. Y. 122), to the *Kane* case (125 N. Y. 164), hold that an owner of land abutting upon a public street has a property right in such street for the purposes of access, light and air, and that the state has no power to grant to a railroad the right to occupy the street when such occupation injuriously affects the enjoyment by the property owner of such rights, except by the exercise of the power of eminent domain, and when a street is thus used by the railroad, without condemnation proceedings or a grant from the property owner, it is responsible to him for any damages resulting therefrom. Unless there is some distinction to be made between the rights which pertain to an owner of land upon a public river and one upon a public street, which is not perceived, then the principles sanctioned by this court in these cases virtually overrule the *Gould* case, as they are apparently irreconcilable.

The question respecting the rights of riparian owners in such a case was determined in the Supreme Court of the United States in *Yates* v. *Milwaukee* (10 Wall. 497).

Mr. Justice MILLER, in delivering the opinion of the court, stated the law clearly as determined by that court: "But

whether the title of the owner of such a lot extends beyond the dry land or not, he is certainly entitled to all the rights of a riparian proprietor whose land is bounded by a navigable stream, and among these rights are access to the navigable part of the river from the front of his lot, the right to make a landing, wharf or pier for his own use or for the use of the public, subject to such general rules and regulations as the legislature may see proper to impose for the protection of the rights of the public, whatever these may be.   *   *   *   This riparian right is property and is valuable, and though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or -capriciously destroyed or impaired. It is a right of which, when once vested, the owner can only be deprived in accordance with established law, and if necessary that it be taken for the public good upon due compensation." (*St. Louis* v. *Rutz*, 138 U. S. 246.)

In England it was held quite recently that the owner of an estate on the tide-waters of the Thames was entitled to compensation, not only for the land actually taken under the authority of a statute for the construction of a public road along the shore, which cut off the owner's access to the river, but also for the permanent damage to the whole estate in consequence of its change by the improvement from river side to road side property, including his individual and particular right to use the shore of the river. (*Buccleuch* v. *Metropolitan Board of Works* (L. R. [5 E. & I. App.] 418.)

In nearly all of our sister states where the question has arisen the same or substantially similar rules have been adopted. (*Ashby* v. *Eastern R. R. Co.*, 5 Met. 368 ; *Steam Engine Co.* v. *Steamship Co.*, 12 R. I. 348 ; *Chapman* v. *O. & M. R. R. R. Co.*, 33 Wis. 629 ; *Delaplaine* v. *C. & N. W. R. Co.*, 42 id. 214 ; *Holton* v. *Milwaukee*, 31 id. 38 ; *Brisbine* v. *St. Paul & S. C. R. R. Co.*, 23 Minn. 114.)

The case of *Stevens* v. *Patterson & Newark R. R. Co.* (34 N. J. L. 532), in which a contrary rule was adopted, was decided largely upon the authority of the *Gould* case and that of *Buccleuch* v. *Metropolitan Board of Works* (L. R. [5

Exch.] 221) which, as we have seen, was subsequently reversed in the House of Lords. (Gould on Waters, § 151.)

It must now, we think, be regarded as the law in this state that an owner of land on a public river is entitled to such damages as he may have sustained against a railroad company that constructs its road across his water front and deprives him of access to the navigable part of the stream unless the owner has granted the right, or it has been obtained by the power of eminent domain. This principle cannot, of course, be extended so as to interfere with the right of the state to improve the navigation of the river or with the power of congress to regulate commerce under the provisions of the Federal Constitution. The plaintiffs were, therefore, entitled to recover such damages as they could prove to have been sustained by them prior to March 3, 1885, but on account of the erroneous rules adopted for determining the damages, above pointed out, the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed. _____