## WILLIAM H. BENT & others *vs.* WOODWARD EMERY & others.

Suffolk.    December 13, 1898. — May 23, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Flats — Dredging — Taking of Property — Constitutional Law — Right of Owner to Compensation — Statute.*

The dredging of flats by the board of harbor and land commissioners, under the authority of Sts. 1897, c. 486, § 5, and 1898, c. 278, § 3, resulting in the removal of a substantial quantity of earth and the sinking of the surface of the flats permanently under water, is such a taking of his property as to entitle the owner to compensation therefor, although he has no right to fill or build upon the flats, it being probable that in a few years the growth of the city will require a change.

Section 4 of St. 1898, c. 278, providing for the recovery of damages occasioned to any person by the dredging of flats by the board of harbor and land commissioners under the authority of the statute, leaves it uncertain who, if any one, is intended to be charged with the payment of such damages.

BILL IN EQUITY, filed October 8, 1898, by the owners of certain lands and flats on the South Bay, so called, in Boston, to restrain the board of harbor and land commissioners from dredging the same. Hearing before *Holmes*, J., who, at the request of the parties, reserved the case for the consideration of the full court. The facts appear in the opinion.

*J. Fox & R. Cushman*, for the plaintiffs.

*J. M. Hallowell*, Assistant Attorney General, for the defendants.

HOLMES, J. It is admitted that the defendants, the board of harbor and land commissioners, intend to dredge flats belonging to the plaintiffs, and to remove from them a substantial

quantity of earth, and the question is whether they have power to do it under St. 1897, c. 486, § 5, or more especially, St. 1898, c. 278, § 3. More specifically, the questions are whether the dredging amounts to a taking of property, and if so, whether adequate provision is made for compensation, or whether the dredging can be justified under the police power or otherwise without compensation.

We think that it must be understood that at least the earth which is to be removed from the plaintiffs' flats is to be taken. That is the natural meaning of the statement that it is to be removed, and besides, whether the earth is taken out to sea or used, as the contract for dredging contemplates, to fill other flats, we cannot assume that the plaintiffs will or can furnish a place for it. Apart from the appropriation of the earth, the change in the surface of the flats in such a way as to bring it permanently under water is a very appreciable diminution of the owner's rights. It is true, that at present they have no right to fill or build upon the flats. But it is agreed to be probable that in a few years the growth of the city will require a change, and this probability may be taken into account in deciding whether the theoretic damage is one of those minima which the law does not take into account.

It would be open to argument at least that an owner might be stripped of his rights so far as to amount to a taking without any physical interference with his land. On the other hand, we assume that even the carrying away or bodily destruction of property might be of such small importance that it would be justified under the police power without compensation. We assume that one of the uses of the convenient phrase, police power, is to justify those small diminutions of property rights, which, although within the letter of constitutional protection, are necessarily incident to the free play of the machinery of government. It may be that the extent to which such diminutions are lawful without compensation is larger when the harm is inflicted only as incident to some general requirement of public welfare. But whether the last mentioned element enters into the problem or not, the question is one of degree, and sooner or later we reach a point at which the Constitution applies, and forbids physical appropriation and legal restrictions alike unless they are paid for.

In the case at bar, the act of 1898, authorizing the changes, was passed on the petition of the Roxbury Central Wharf Company, the owner of adjoining wharves, which will be benefited by them. The dredging is to be done to improve navigation and sanitary conditions, but in view of the probable future of the region, already referred to, and of the fact that the place of the dredging is above seven bridges, we do not feel called upon to strain the police power in aid of public needs. We are of opinion that, under the circumstances of this case, the combined effect of removing the plaintiffs' earth and sinking the surface of their flats under water is such a taking of their property as to require compensation in order to satisfy the law. See *Thunder Bay River Booming Co.* v. *Speechly,* 31 Mich. 336, 344, 345; *Carson* v. *Coleman,* 3 Stockton, 106; Gould, Waters, (2d ed.) § 169; Angell, Watercourses, § 462; Tiedeman, Police Power, 452, § 125 a.

It is argued for the respondents, that, irrespective of the police power, the Commonwealth, as trustee of the *jus publicum* by force of the ordinance of 1647, may do what the Legislature has purported to authorize, under its property rights, so that in strictness no interference with the rights of the plaintiffs is threatened, as thus far we have assumed. To this it is enough to say that, if what is proposed to be done cannot be justified under the police power over the subject matter, taking the position of the Commonwealth into account, it stands less well as an act of ownership alone. The right to submerge the plaintiffs' flats and to carry off their soil is less readily justified by any right reserved by the Commonwealth as grantor than by its power as sovereign to exact relatively small sacrifices from individuals for the common good. *Weaver* v. *Mississippi & Rum River Boom Co.* 28 Minn. 534, 537. Cases like *Sage* v. *New York,* 154 N. Y. 61, throw no light upon this question, because there the plaintiff had no title to the flats, but only such riparian rights as were recognized in *Rumsey* v. *New York & New England Railroad,* 133 N. Y. 79. See *Shively* v. *Bowlby,* 152 U. S. 1, 19, 21.

If the plaintiffs' property must be paid for, the question remains whether sufficient provision is made for payment. There has been no taking of flats or rights in the manner provided for in St. 1897, c. 486. By § 4 of the act of 1898, "Any person

suffering injury by the doings hereinbefore authorized may have the same determined in the Superior Court . . . in the manner provided for the recovery of damages sustained by reason of the laying out of ways." But it is not said by whom the damages are to be paid. We do not feel warranted in construing these words as by implication pledging the faith of the Commonwealth to the payment. We really are left uncertain who was intended to be charged by the Legislature, or whether it had any one in particular in mind. The act is not at all like the Metropolitan Park act, St. 1893, c. 407. There the Commonwealth was to take and own the parks, § 4, and, to meet the expenses incurred under the act, was to issue bonds, § 9, so that there was no doubt who was to pay the damages estimated as provided in § 7. If the provision in § 3, that the board may expend for dredging and filling any moneys received as compensation for displacement of tidewater in South Bay, refers to payment for anything except the labor engaged in the work, the charge upon a special and limited fund is not enough to satisfy the Constitution. *Connecticut River Railroad* v. *County Commissioners*, 127 Mass. 50.                                   *Decree for the plaintiffs.*