### SOUND MARINE & MACHINE CORPORATION v. WESTCHESTER COUNTY.

District Court, S. D. New York.

July 15, 1942.

See, also, D.C., 37 F.Supp. 26.

James H. Hickey, of New York City, for libelant.

William A. Davidson, Co. Atty., of Port Chester (Frank J. Claydon, Asst. Co. Atty., of Mt. Vernon, of counsel), for respondent.

GODDARD, District Judge.

This matter comes before the court on exceptions to report of Commissioner appointed in suit in admiralty to ascertain any special damages which libelant may establish because of respondent's interference with libelant's rights of navigation.

Libelant is the owner of property abutting on the waters of Mamaroneck Harbor, Mamaroneck, New York, upon which it maintains a shipyard for building, repairing and storing boats. In 1929 the County of Westchester laid a sewer pipe across the channel in the water in front of libelant's property, which libelant alleged decreased the depth of the channel and damaged its property. Libelant filed a libel in admiralty to compel respondent to remove the pipe or, in the alternative, to pay damages for obstructing libelant's right of access to such waters.

On appeal to the Circuit Court of Appeals (Sound Marine and Machine Corporation v. Westchester County, 2 Cir., 100 F.2d 360, certiorari denied 306 U.S. 642, 59 S.Ct. 582, 83 L.Ed. 1042) it was held that libelant, being a riparian owner, has the right of access to and from the navigable waters adjacent to its property; that if this right of access has been interfered with by respondent's improper construction of the sewer, libelant is entitled to any special damages which it

may establish because of the interference with its rights of navigation, and that this court of admiralty has jurisdiction to determine the amount of such damages, but does not have the power to grant an injunction. The case was sent back to the district court to determine whether or not the sewer pipe had been laid in accordance with the permit of the War Department; if so, to dismiss the libel, and if not, to award any special damages which libelant may establish because of interference with its rights of navigation. The district court found that the sewer pipe had not been constructed in accordance with the permit and referred to a Commissioner the matter of damages. This decision was affirmed in 2 Cir., 113 F.2d 931. The Commissioner has allowed libelant damages in the amount of $2,500. Both libelant and respondent have filed exceptions to the Commissioner's report.

Libelant contends that it is entitled to be compensated for permanent injuries to its property rights based upon the difference between the market value of its premises without the sewer pipe obstruction and the value of its premises with such obstruction. Respondent contends, in effect, that libelant is only entitled to the difference between the rental value of the premises before the construction of the pipe and the rental value after such construction based upon the use to which the premises was and is being put and not the use to which the premises might be put.

The maintenance of the improperly constructed sewer pipe in the waters adjacent to libelant's premises is in the nature of a trespass upon its right of access to such waters. In my opinion the proper rule of damages in this case is the rule laid down by the New York Court of Appeals in Pappenheim v. Metropolitan Elevated Railway Co., 128 N.Y. 436, 28 N.E. 518, 13 L.R.A. 401, 26 Am.St.Rep. 486, which, although it did not involve a riparian owner's right of access to navigable waters, did involve the analogous situation of a property owner's right to light, air and access. The court said at page 444 of 128 N.Y., at page 518 of 28 N.E.: "In an action at law the owner of the property interfered with or trespassed upon cannot recover damages to his premises, based upon the assumption that such trespass is to be permanent. He can recover only the damages which he has sustained up to the commencement of the action. The judgment entered for the damages sustained does not operate as a purchase of the right to continue the trespass. But the owner may resort to equity for the purpose of enjoining the continuance of the trespass, and to thus prevent a multiplicity of actions at law to recover damages; and in such an action the court may determine the amount of damage which the owner would sustain if the trespass were permanently continued, and it may provide that upon payment of that sum the plaintiff shall give a deed or convey the right to the defendant, and it will refuse an injunction when the defendant is willing to pay upon the receipt of a conveyance. The court does not adjudge that the defendant shall pay such sum, or that the plaintiff shall so convey. It provides that, if the conveyance is made and the money paid, no injunction shall issue. If defendant refuse to pay, the injunction issues." See also Stowers v. Gilbert, 156 N.Y. 600, 604, 51 N.E. 282.

Therefore it appears that a court of equity may award damages for permanent injuries to property caused by trespass only in those cases where the trespasser has power to acquire legal title to the property trespassed upon, and the trespasser concedes that such trespass is to continue permanently. In making such an award the court does not find that the property has been permanently damaged or that the trespasser must pay damages for permanent injuries. Rather the court finds that if the trespass is to continue permanently the damages which the owner will eventually sustain amount to so much and the trespasser may elect to pay such damages—thereby conceding that the trespass is to continue permanently—or to discontinue the trespass, whereupon the court would enjoin any future trespass. In the latter case the property would not be permanently injured but would be restored to its former condition.

Assuming, without deciding, that the County of Westchester has power to acquire legal title to the libelant's right of access to the waters adjacent to its property, does this court have power to award damages for permanent injuries caused by respondent's trespass upon such right of access? I do not think so. The power to award damages for permanent injuries caused by trespass is an incident to and depends upon the power to grant injunctive relief in the event that

such damages are not paid. However, it has been held in this case by the Circuit Court that this court does not have power to grant injunctive relief. This court could not compel the respondent to pay the permanent damages because the property has not as yet been permanently injured, nor could this court compel it to abate the nuisance and discontinue the trespass.

■ Damages for permanent injuries cannot be awarded upon the assumption that the trespass is to continue permanently. On the contrary, we must assume that the trespass is temporary only and is not to continue. As the court stated in Dietzel v. City of New York, 218 N.Y. 270, 272, 112 N.E. 720: "The invasion of land by the construction of a sewer thereon is not necessarily permanent. The sewer may be removed and the land restored to its former condition. There is no presumption that the trespasser will persist in his wrongdoing in such a case, but, on the contrary, the plaintiff's damages are to be assessed on the assumption that he will right the wrong, * * *."

■ Not having the power to grant injunctive relief to the libelant and therefore not having the power to award damages for permanent injury to its property rights, this court can only award temporary damages or such damages as the libelant sustained up to the commencement of the action, or, at most, up to the entry of a decree herein. It makes no difference which period we use because in either event the damages are the same. Such being the case, the proper measure of damages is not the difference in the value of libelant's property with and without the obstruction in the water (Dietzel v. City of New York, supra), but rather the diminished rental or usable value of the property. In computing such damages the libelant is not entitled to recover damages which it might have sustained if it had put its property to some use other than the use to which it had been put. Rumsey et al v. New York and New England Railroad Co., 133 N.Y. 79, 30 N.E. 654, 15 L.R.A. 618, 28 Am.St.Rep. 600; Tallman v. Metropolitan Elevated Railroad Co., 121 N.Y. 119, 23 N.E. 1134, 8 L.R.A. 173.

■ It was error, therefore, for the Commissioner to have received evidence as to the diminished market value of the libelant's premises, or to receive evidence as to what uses the libelant might have made of his premises but for the obstruction, in the absence of proof that libelant intended to change the use of his premises and was unable to do so because of this obstruction.

■ The only evidence as to the rental value of libelant's property was offered by two witnesses produced by the respondent who testified in substance that the construction of the sewer pipe did not affect the rental value of libelant's premises and that both before and after the construction of the pipe the rental value was approximately $2500 per year. Furthermore, it is uncontroverted that the use to which libelant put its premises was not in any way hampered by the obstruction. Prior to the construction of the sewer pipe the depth in the channel in front of libelant's premises was 10 feet mean low water and after such construction it was 6 feet 8 inches mean low water. But the depth of the water between the channel and the end of a dock on libelant's premises, a distance of about 350 to 400 feet, was 3 feet or less mean water. At high water the depth at libelant's dock was 7 feet and at the same time the water was 13 feet over the pipe. Thus any boat that could reach libelant's dock either at low water or at high water might easily pass over the sewer pipe without being obstructed in any way.

The libelant's yard is equipped to handle boats having a draft of not more than 6 feet 7 inches, and when there is sufficient water between the channel and libelant's boat yard for such boats to navigate, there is more than 13 feet of water over the sewer pipe in the channel.

Up to the present time, therefore, the libelant has suffered only nominal damages because of the construction and maintenance of the sewer pipe in the waters adjacent to his premises. If the situation changes in the future the libelant is not precluded from again seeking damages in this court; but if it wishes to enjoin permanently the continued maintenance of the sewer pipe, or in the alternative obtain permanent damages, it must seek relief in another forum.

The Commissioner's report is modified so as to reduce libelant's damages from $2500 to nominal damages only.

Settle order on notice.