# Wytheville

## LAKE BOWLING ALLEY, INC. v. CITY OF RICHMOND.

### June 11, 1914.

1. EMINENT DOMAIN—*Act, March 12, 1908—Notice—How Served—Waiver.*—Notice of the assessment of damages in eminent domain proceedings under the act of March 12, 1908, is to be served in the manner prescribed by that act, and not in accordance with the Code. The service in the case at bar on an agent of the owner in charge of the property affected was sufficient. But even if it were irregular, the admission of the owner of its receipt, without questioning its sufficiency or the manner of service, and only objecting to the amount of damages allowed, amounted to an appearance to the proceeding, and such appearance was a waiver of all questions as to service of the notice and was equivalent to personal service.

2. EMINENT DOMAIN—*Act, 1908—Appeal.*—A property owner who takes no appeal from the assessment of damages to his property under the act of March 12, 1908, cannot make the objection that the assessor returned his report sooner than he should have done, as he is in no way prejudiced thereby.

3. EMINENT DOMAIN—*Finality of Proceeding—Reopening—Damages.* Whatever power a city council may have in its legislative capacity to make additional compensation to a land owner if the damages assessed were inadequate, it has no power to reopen assessment proceedings under the act of March 12, 1908, after the same have, by the terms of the act, become final and the right of appeal therefrom has expired.

4. EMINENT DOMAIN—*Damages—Special Assessments—Constitutional Law*—A special assessment statute which gives the land owner an appeal of right from the award of the assessor of damages to the corporation court of the city where the matter is heard *de novo* is not unconstitutional. Special assessments statutes are not objectionable on the ground that they deprive the land owner of his right to have a jury ascertain what will be a just compensation for the land proposed to be taken (or damaged) for a public highway, unless the constitution in

terms requires that such compensation shall be so assessed, and there is no such requirement in the Constitution of this State.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Isaac Diggs,* for the plaintiff in error.

*H. R. Pollard* and *Geo. Wayne Anderson,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Upon this writ of error we are asked to review a judgment in behalf of the city of Richmond in an action brought by the Lake Bowling Alley, Inc., to recover damages for lowering the grade of Beverley street in front of its premises. The city of Richmond had passed an ordinance directing the reduction of the street to the grade line established by law, and in conformity with the act of Assembly ordered the assessor of damages to inspect and assess the damages, if any, to abutting property owners. Acts, 1908, p. 328.

The assessor gave written notice to the plaintiff that the sum of $50.00 had been ascertained by him as the damages that would be suffered by it in consequence of the grading, and cited the plaintiff to appear in his office in the city hall at an hour and day named to show cause against the ascertainment. This notice was delivered by the assessor to one Bell, who was found at the plaintiff's place of business and represented himself as the

manager. It is denied that he was manager, but is admitted that he was an agent and had charge of the premises from about four o'clock in the afternoon until the closing hour at night. In our view of the matter, however, it is immaterial, under the facts of the case, whether he was an officer of the corporation or an agent merely.

No one representing the company appeared before the assessor at the time and place mentioned in the notice to contest the award, but on the day following the return day of the notice, the assessor received a letter from the president of the corporation, in which he says in part: "I apologize to you for not appearing on yesterday. I made a mistake in the time; thought it was last night. I wish to notify you we claim our damages will be more than $50.00 by cut on Beverley street. Am willing to submit to any one for arbitration . . "

There was no appeal by the company from the award of the assessor, although, as indicated by the president's letter, he was dissatisfied with the amount of the assessment. There being no appeal, the assessor reported his finding in this and other cases to the city council, and it was referred to the committee on finance, where the report remained until October 2, 1911, when it was reported back to the council and confirmed by a joint resolution and an appropriation made to meet the assessment. The resolution was concurred in by the board of aldermen and approved by the mayor and became final October 14, 1911. In April, 1912, the plaintiff, seven months after the time when it ought to have appeared before the assessor, and six months after its right to appeal from his award to the hustings court had expired under the provision of the statute, submitted its contention to the council that the damages awarded were inadequate; whereupon, that body, by resolution directed the

assessor, "to take up ascertainment made on said property in order that C. H. Cosby (president of the company) may have a hearing, and the assessor of damages is hereby directed to notify said C. H. Cosby when such hearing will take place." That resolution was referred to the successor in office of the first assessor of damages, and on his resignation was returned, without any action having been taken thereon, to the administrative board.

In the action for damages in the hustings court the defendant interposed a plea of *res adjudicata,* and by consent of parties all questions of law and fact were submitted to the court. The court upon the evidence overruled the motion of the plaintiff to reject the plea and rendered the judgment under review for the defendant.

The first error alleged involves the action of the trial court in holding that the notice served by the assessor of damages constituted due and legal notice to the plaintiff in error of the ascertainment of the damages accruing to it as an abutting owner in consequence of the reduction of the grade of Beverley street in front of its lot.

The vice in that assignment is in supposing that the service of notice of assessments under the act of March 12, 1908, must conform to the requirements of ch. 158 of the Code, rather than to those of the act referred to. Sections 3225, 3226 and 3227 deal with process directed to an officer and returnable within ninety days to the court or clerk's office. See section 3220. While the assessment statute makes it the duty of the assessor to give written notice to the abutting owners of the assessment and cite them to appear before such officer "not less than ten days after the service thereof, at a time and place to be designated therein, to show cause, if any they can, against the ascertainment so made as aforesaid. Such notice may be given by personal service on each of the property owners, except that notice to an infant or insane person may be served on his guardian

or committee, and notice to a non-resident may be mailed to him at his place of residence or served on any agent of his, having the property in charge, or on the tenant of the freehold, or, in any case, in lieu of such personal service on the parties, such notice may be given by publishing the same in some daily newspaper published in the city or town, once a week for two successive weeks, the last publication to be made at least ten days before the day on which the parties are cited to appear.''

These provisions are inconsistent with the sections of ch. 158 relied on, and show that the notice in question is to be served in the manner prescribed by that act and not in accordance with the Code.

If it be conceded that the service of the notice on Bell, the agent of the corporation, was irregular, nevertheless, it did not prejudice the company, for the letter of the president to the assessor admits that he actually received the notice. Moreover, he does not question its sufficiency, nor does he object to the mode of service, though he does complain of the inadequacy of the damages allowed. The conduct of the president, in these circumstances, amounted to an appearance to the proceeding. Such appearance, ''or a general appearance, is a waiver of all questions of the service of process, and is equivalent to personal service.'' *Norfolk & Western R. Co.* v. *Sutherland,* 105 Va. 545, 54 S. E. 465; *Rosenberg* v. *U. S. Frid. & Guar. Co.,* 115 Va. 221, 78 S. E. 557.

2. The second ground of error alleged is that the assesor filed his report with the clerk of the council sooner than he ought to have done under the statute. The act provides that a person cited to appear before the assessor may appear in person or by counsel and state his objections to the award. If such objections are overruled, he shall, within thirty days thereafter, but not afterwards, have an appeal of right to the corporation or hustings court of the city, or in case of a town to the circuit

28

court of the county in which such town is situated. The original record is delivered to the clerk of the court, who dockets the appeal and it is heard *de novo* by the court or judge thereof in a summary way, without pleadings in writing and in term time or vacation, after reasonable notice to the adverse party. "The committee or officer having the matter in charge shall, within ten days after the expiration of the time within which an appeal may be taken to the court, file a detailed report with the clerk of the council showing separately the amount of damages assessed in favor of each property owner, and also which, if any, have taken an appeal . . ."

The plaintiff in error took no steps looking to an appeal: and, therefore, could not have been prejudiced by the circumstance that the assessor may have filed his report with the clerk of the council sooner than he should have done under the statute. If it had sought an appeal and been deprived of that right by such irregularity, there would have been just ground for complaint, but it is not pretended that an appeal was contemplated or that any injury was suffered by the premature filing of the report. The chief object of filing the report is to enable the council to make provision for paying the assessment; so that a party who does not intend to appeal might be benefited, but could not be injured by speedy provision for the payment of damages assessed in his favor.

3. The third ground of error alleged is to the action of the trial court in excluding as part of the testimony offered by the plaintiff the joint resolution of the council of April 12, 1912, directing the assessor "to take up assessment made on said property in order that said C. H. Cosby may have a hearing."

As observed, this resolution was passed by the council six months after the approval and confirmation of the award made by the assessor, and more than six months after the expiration of the time allowed for an appeal.

The assessment proceedings, by the terms of the act, had become final and passed beyond the control of the assessor and the council. Whatever power the council may have had in its legislative capacity to make additional compensation to the plaintiff in error if the damages assessed were deemed inadequate, its attempt to reopen the assessment proceedings was plainly *ultra vires.*

4. The fourth and last ground of error alleged which calls for special notice is that the act of March 12, 1908, and the ordinance of the city of Richmond passed in furtherance of it are unconstitutional, being in contravention both of the Constitution of Virginia and of the United States

Special assessment statutes are not amenable to objection on the ground that they deprive the land owner of his right to have a jury to ascertain what will be a just compensation for the land proposed to be taken (or damaged) for a public highway, unless the Constitution in terms requires that such compensation shall be so assessed. And there is no such requirement in the Constitution of Virginia. It is true that for many years prior to April 30, 1874, the statutes of the State provided for a jury of *ad quod damnum,* composed of twelve qualified jurors of the vicinage, to make these assessments. But the legislature of that year amended the former statute and substituted a commission in place of the jury to make the assessment. Acts 1874, p. 468. Since that enactment the Constitution of 1902 has been adopted, and the convention, with knowledge of the fact that the legislature had substituted a commission for the jury of *ad quod damnum* in assessment cases, manifested no disposition to restore the former law. This circumstance affords persuasive evidence that the convention did not disapprove of the change wrought by the amendment referred to.

Under the act of 1908, as we have seen, the land owner has an appeal of right from the award of the assessor of damages to the corporation or hustings court of the city, where the matter is heard *de novo,* and in that way his rights are adequately safeguarded.

In *Wilburn* v. *Raines,* 111 Va. 334, 68 S. E. 993, this court in construing a special road law for Giles county (Acts, 1908, p. 611) held, that "the power of eminent domain is an incident of sovereignty and is vested solely in the legislature, subject to constitutional restriction. It may exercise the right directly, or indirectly, through such agencies and in such manner and to such extent as it pleases, subject to the constitutional provision that private property shall not be taken for public uses except upon making just compensation. Due process of law in this connection only requires that the power shall be exercised in subordination to established principles."

In that case the original tribunal was a district board of road commissioners, composed of the supervisor of the district and a road commissioner. There was a right of appeal from the action of that board to another commission composed of two supervisors and one road commissioner from other districts. From the decision of the second commission there was no appeal except in the matter of damages, with respect to which an appeal lay to the circuit court.

To condemn this class of legislation would overthrow numerous similar enactments under which property rights have accrued, and would embarrass and hamper the legislature in delegating the exercise of the power of eminent domain to municipalities and other subordinate agencies of the State.

For the foregoing reasons the judgment complained of must be affirmed.

*Affirmed.*