Staunton.

STATE HIGHWAY COMMISSIONER OF VIRGINIA V. KREGER.

September 10, 1920.

1. EMINENT DOMAIN — *State Highway Commission — Constitutionality of Acts Extra Session 1919, p. 53, Providing for Condemnation—Just Compensation.*—As Acts Extra Session 1919, ch, 31, p. 53, *et seq.,* providing for the condemnation of land for roads embraced in the State highway system, makes sufficient. provision for payment of the just compensation which is guaranteed by section 58 of the Constitution of 1902, it is unnecessary to consider other statutes to determine whether they contain any additional provision for payment of such compensation.

2. EMINENT DOMAIN — *State Highway Commission — Constitutionality of Acts Extra Session 1919, p. 53, Providing for Condemnation—Just Compensation.*—Acts Extra Session 1919, ch. 31, p. 53, *et seq.,* requires that the compensation assessed and reported by the commissioners or viewers first appointed shall be paid before the title to the property and rights condemned shall vest in the Commonwealth, and before the commission shall have the right to enter upon construction or use of the property and rights condemned. This provision is in substance the same as that of the general eminent domain statute of the State, and fully satisfies the constitutional guaranty contained in section 58 of the Constitution of 1902, as to the taking or damaging property without just compensation.

3. EMINENT DOMAIN — *State Highway Commission — Constitutionality of Acts Extra Session 1919, p. 53, Providing for Condemnation—Just Compensation.*—Acts Extra Session 1919, ch. 31, p. 53, *et seq.,* is not invalid because it does not provide security that the condemnor will be able to have money forthcoming and ready to pay when the assessment of the compensation has been made, lest after all the expense and annoyance to which the property owner has been put by the necessity of defending the condemnation proceedings, his property may not in the end be condemned. In such event the property owner will not have his property taken or damaged, and hence would not have suffered any injury for which he has the constitu-

tional guaranty provided by section 58 of the Constitution of 1902.

4. EMINENT DOMAIN—*Expense and Annoyance of Proceedings—Just Compensation.*—The expense and annoyance to which a property owner is put by the necessity of defending condemnation proceedings are incidents to the exercise of the sovereign power of eminent domain, for which there is no constitutional guaranty of compensation, and the hardships must be borne *pro bono publico*, as many other greater hardships have to be borne by the citizen under the exercise of other sovereign powers of government, as, for example, the war power.

5. EMINENT DOMAIN—*Just Compensation—Statute Not Providing for Time or Manner of Payment.*—Where the Constitution does not specify any time or manner of payment of the compensation (which is true of the Virginia Constitution), condemnation statutes, which require the ascertainment and payment of just compensation before there is any entry for the purpose of construction of the proposed works, comply with the constitutional guaranty as to just compensation.

6. EMINENT DOMAIN—*Just Compensation—Statute Not Providing for Time or Manner of Payment—Security for Payment.*—It is only where the statute permits, or to the extent that it permits, the seizure and use of the propery previous to the payment of the compensation that it is at all essential to the validity of the statute that it should provide any security for payment of the unpaid compensation. If all or a portion of the compensation is permitted by the statute to be paid after the entry, still the statute is valid if it affords the owner such a remedy as to the compensation that he will, after the entry, receive with reasonable certainty and without unnecessary or unreasonable delay the just compensation to which he is entitled and which is not paid before entry.

7. EMINENT DOMAIN — *State Highway Commission — Constitutionality of Acts Extra Session 1919, p. 53, Providing for Condemnation—Just Compensation—Damages Subsequent to Passing of Title.*—That portion of Acts Extra Session 1919, ch. 31, p. 53, *et seq.*, which provides for the payment of such compensation as may be allowed the property owner in the statutory proceedings subsequent to the passing of the title and the accruing to the Commonwealth of the right of entry and of proceeding with the proposed works is not unconstitutional as not sufficiently providing for the just compensation guaranteed by section 58 of the Constitution of 1902.

8. EMINENT DOMAIN — *State Highway Commission — Constitutionality of Acts Extra Session 1919, p. 53, Providing for Condemnation—Just Compensation—Damages Subsequent to Passing*

*of Title.*—It is unquestioned that the general eminent domain statute of the State fully complies with the constitutional requirement as to just compensation (section 58 of the Constitution of 1902), both in its provisions for the payment of the compensation awarded by the commissioners first appointed, and for the payment of any subsequently awarded compensation. And these provisions not having been altered by Acts Extra Session 1919, ch. 31, p. 53, *et seq.*, are, by the terms of that act, incorporated into it, *mutatis mutandis.* Therefore Acts Extra Session 1919, ch. 31, p 53, *et seq.*, gives the property owner a reasonably certain and ample provision for the payment of that portion of the compensation which may be allowed him in the subsequent proceedings.

9. EMINENT DOMAIN — *State Highway Commission — Constitutionality of Acts Extra Session 1919, ch. 31, p. 53, et seq.—Denial of Appeal to the Supreme Court.*—Acts Extra Session 1919, ch. 31, p. 53, *et seq.*, is not in violation of the State Constitution as denying by implication the right of appeal to the Supreme Court of Appeals.

10. EMINENT DOMAIN — *State Highway Commission — Constitutionality of Acts Extra Session 1919, ch. 31, p. 53, et seq.—Denial of Appeal to the Supreme Court.*—Since every presumption is in favor of the constitutionality of a statute, Acts Extra Session 1919, ch. 31, p. 53, *et seq.*, could not be held to violate the Constitution by its denial of the right of appeal to the Supreme Court of Appeals by implication, unless it were a necessary implication.

11. EMINENT DOMAIN—*Question of Whether Use is a Public One.*—Whether a condemnation is for a public or a private use is a judicial question and is subject to review by the courts. But as in the instant case there was no question but that the use was a public one, the question whether the statute allowed a review by the courts was not involved.

12. EMINENT DOMAIN—*Constitutionality—Review by the Courts—Acts Extra Session 1919, ch. 31, p. 53, et seq.*—A condemnation statute is not invalid merely because it delegates the decision as to location to ministerial agents, and forbids any judicial review of their action. Therefore, Acts Extra Session 1919, ch. 31, p. 53, *et seq.*, is not unconstitutional because the necessity or expediency of the location of a highway is delegated to the State Highway Commission without judicial review.

13. EMINENT DOMAIN — *State Highway Commission — Constitutionality of Acts Extra Session 1919, p. 53, et seq., Providing for Condemnation.*—Acts Extra Session 1919, ch. 31, p. 53, *et seq.*, providing for the condemnation of land for roads embraced in the State highway system, is constitutional.

Error to an order of the Circuit Court of Washington county. Judgment for defendant. Plaintiff assigns error.

*Reversed and remanded.*

This is a case of a petition to the court below by the State Highway Commissioner of Virginia for the condemnation of an easement, over certain land belonging to the defendant in error, for a right of way for the alteration of the location of the route for a portion of a public road embraced within the "State highway system," and for appointment of commissioners or viewers to ascertain and report what would be a just compensation for the aforesaid right of way proposed to be taken and for the damages, if any, resulting to the adjacent or other property of the defendant in error, or to the property of any other person, beyond the peculiar benefits that would accrue to such properties, respectively, from the opening, grading and improving of said road as proposed, as set forth in the petition and in the plat and profile filed therewith.

It appears from the petition and the copy of resolutions theretofore adopted by the State Highway Commission, that in the judgment of such commission "it is necessary, requisite and suitable" that said alteration in location and construction of said road should be made, and that the commission had accordingly theretofore located the route of such proposed alteration of the road and established the grade as per the plat and profile aforesaid.

The proceeding was instituted under the statute, Acts Extra Session, 1919, p. 53, *et seq.*, the material provisions of which are as follows:

"* * * The commission is hereby vested with the power of eminent domain in so far as may be necessary for the establishment, location, construction, reconstruction, alteration, maintenance and repair of the roads embraced in

the 'State highway system,' and for these purposes and all purposes incidental thereto, may condemn rights of way of such width and on such routes and grades as by said commission may be deemed requisite and suitable; and lands, quarries and locations with rights of ingress and egress, containing gravel, clay, sand, stone, rock, timber and any other road materials deemed by the commission useful or necessary in carrying out the purposes aforesaid.

"Proceedings for condemnation hereunder shall be instituted and conducted in the name of 'the State Highway Commissioner of Virginia,'. and the procedure shall, except in so far as altered hereby, be *mutatis mutandis* the same as is prescribed by law for railroad corporations and the rights of all persons affected shall be subject to the general laws of this State in so far as the same may be applicable under the general purposes of this act, and except as hereby altered and modified.

"The proceedings for condemnation shall be by petition to the circuit court of the county in which the land, property and rights or the major portion thereof sought to be acquired are located, or to the judge of such court in vacation, which petition shall set forth with reasonable particularity a description and designation of the interests, rights and property intended to be taken, the name or names of the landowners whose property is to be taken or affected, and such other facts as may be deemed necessary by the commission to give full information to the court and all persons in interest, and shall be verified by oath of a member of the commission or by its duly authorized agent or attorney.·

"Upon the return of the report of the commissioners or viewers appointed in such proceedings the sum ascertained thereby as compensation or damages to the property owners may be paid to the person or persons entitled thereto, or for them into court or to the clerk thereof, upon which title

to the property and rights condemned shall vest in the Commonwealth of Virginia in fee simple, or to such extent as may be prayed for in the petition, and the commission shall have the right to enter upon such construction upon or use of the property and rights condemned as may be authorized by said report, provided the right of appeal from or review of said report on exception thereto is hereby given to the property owner or to the commission, to the circuit court, on the question only of damages or compensation."

The defendant in error objected to the appointment of commissioners or viewers on two grounds, relied upon in the court below and on this appeal, which were stated in writing as grounds of defense, and are as follows:

1. "Because the statute which purports to give authority to appoint commissioners is nugatory, and the court is without authority to make such appointment."

2. "Because the statute, by implication, denies the right of appeal to the Supreme Court of Virginia, which is in violation of the Constitution of the State."

The court below held the second ground of defense to be untenable, but sustained the first ground of defense, declined to appoint commissioners or viewers, and dismissed the petition, and the State Highway Commissioner brings error.

The defendant in error assigns as cross-error the action of the court below in its holding aforesaid with respect to said second ground of defense.

*Jno. R. Saunders, Attorney-General, Henry Roberts* and *J. F. Hall*, for the appellant.

*Hutton & Hutton*, for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions raised by the assignments of error and cross-error will be disposed of in their order as stated below.

[1] 1. Does the statute under which this proceeding was instituted make sufficient provision for payment of the just compensation which is guaranteed by section fifty-eight of the State Constitution so as to satisfy such constitutional requirement?

Section 58 of the State Constitution provides that the General Assembly "shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation."

The position of the defendant in error, in substance, is that the provisions of the statute in question (which in effect requires actual prepayment of the compensation as soon as it is ascertained as the condition precedent, in the first instance, to the passing of the title and the right of entry and of proceeding with the construction of the works, and also, later, as the condition precedent to the right to retain the possession and the title; and further provides for judgment against the State Highway Commissioner in his official capacity for any further compensation awarded after the right of entry and the right to begin the construction of the works has accrued), do not provide for the payment of the compensation with the certainty which is required by said section of the Constitution. And that to satisfy the requirement of such section of the Constitution it is essential that the statute should go further and that it should itself provide, or at least should be aided in its provisions by some other statute law providing, for laying the levy of a tax or making an appropriation of funds for the payment of the compensation; designating out of what fund it is to be paid and by whose check, draft or warrant and by what character of warrant. And the various statutes creating and conferring powers upon the State High-

way Commission and upon the State Highway Commissioner are referred to, and it is contended that they omit to make such an additional provision; that there is no such additional provision of law in any statute or in the general law of the State; and that, hence, the statute involved in this case does not comply with the requirement of section 58 of the Constitution aforesaid.

On the other hand, it is contended by the plaintiff in error that the statute law of the State does contain ample additional provision for the payment of the compensation aforesaid, as well as the provision for such payment promptly upon its ascertainment contained in the statute itself, which is drawn in question before us.

In our view of the case it is unnecessary for us to enter upon any examination of the statute law of the State for the purpose of deciding whether it does contain any such additional provision for the payment of the compensation aforesaid, other than that contained in the statute we have under consideration. As we regard the matter that inquiry does not arise in the proceeding before us.

[2] 2. On the question of whether the statute involved in this case sufficiently provides for the compensation, it will be noted that, with respect to the compensation assessed and reported by the commissioners or viewers first appointed, the statute requires that such compensation shall "be paid" before the title to the property and rights condemned shall "vest in the Commonwealth" and before "the Commission shall have the right to enter upon such construction or use of the property and rights condemned as may be authorized by said report." This is in substance the same provision as to the payment of such compensation which for many years has been made in the general eminent domain statute of the State applicable to railroad corporations and other companies possessing the power of eminent domain and is still contained in such statute. See

Code 1919, sec. 4369; Code 1904, sec. 1105f, sub. sec. 9; Code 1849, chap. 56, sec. 11.

In order to comply with the guaranty aforesaid of section 58 of the Constitution, this is the most certain manner in which the statute could provide for such compensation to be made, because the time at which such payment is required to be made will and must precede any injury to private property due to the taking or damaging of it for public uses. This plainly appears from the provisions of the statute under consideration and the general eminent domain statute aforesaid, which by the terms of the former statute are incorporated therein. See Code 1919, sec. 4362, Code 1904, sec. 1105f, sub. sec. 3. To same general effect see Code 1849, chap. 56, sec. 4.

Therefore, as to so much of the compensation guaranteed by section 58 of the Constitution aforesaid as may be included in the first commissioner's or viewer's report aforesaid, it is plain that the provision of the statute under consideration requiring that that must be paid before entry, i. e., before any injury to the property owner due to the taking or damaging of his property, fully satisfies the constitutional guaranty. The end to be attained, namely, the payment of such compensation before any injury is inflicted, is thus perfectly provided for by the statute.

This is true upon principle; and no authority has been cited before us which holds, where the taking or damaging is for a public use, that the provision of a statute, such as that involved in the case before us, for the payment of compensation before entry, does not satisfy the constitutional requirement or guaranty aforesaid.

[3-6] It is urged in argument for the defendant in error that for the statute to be valid it must provide security that the condemnor will be able to have the money forthcoming and ready to pay when the assessment of the compensation has been made, lest after all the expense and annoyance

to which the property owner has been put, by the necessity of defending the condemnation proceedings, his property may not in the end be condemned.  This position loses sight of the fact that in such event the property owner will not have his property taken or damaged, and hence will not have suffered any injury for which he has the constitutional guaranty aforesaid.  And if the condemnation proceeding be abandoned, the result would be the same to him as if it were consummated, so far as any compensation for the annoyance and expense referred to are concerned, for he could not, in the latter event, demand any allowance of compensation for those hardships.  They are incidents to the exercise of the sovereign power of eminent domain, for which there is no constitutional guaranty of compensation, and the hardship must be borne *pro bono publico*, as many other greater hardships have to be borne by the citizen under the exercise of other sovereign powers of government, such, for example, as the war power.

As appears from the authorities on the subject, where the Constitution does not specify any time or manner of payment of the compensation (which is true of the Virginia Constitution), condemnation statutes which require the ascertainment and payment of just compensation before there is any entry for the purpose of construction of the proposed works, comply and most satisfactorily comply with the constitutional guaranty aforesaid.  Lewis on Em. Dom. (2nd ed.) sec. 456; Elliott on Roads and Streets (3rd ed.) sec. 234.  It is only where the statute permits, or to the extent that it permits, the seizure and use of the property previous to the payment of the compensation that it is at all essential to the validity of the statute that it should provide any security for payment of the unpaid compensation.  If all or a portion of the compensation is permitted by the statute to be paid after the entry, still the statute is valid if it affords the owner such a remedy as to the compensation that

he will, after the entry, receive with reasonable certainty and without unnecessary or unreasonable delay, the just compensation to which he is entitled and which is not paid before entry. Such a remedy is the security which the Constitution requires in such case. *Cherokee Nation* v. *Southern Kansas Ry. Co.*, 135 U. S. 641, 10 Sup. Ct. 965, 34 L. Ed. 295; Elliott on Roads and Streets, section 235. To the same effect Lewis on Em. Dom. sections 456-459.

[7, 8] 3. Therefore, the only feature of the statute in question which, in our opinion, admits of debate upon the subject of the sufficiency of its provisions to provide for payment of the compensation guaranteed by the Constitution as aforesaid, is that portion of it which provides for the payment of such compensation as may be allowed the property owner in the statutory proceedings subsequent to the passing of the title and the accruing to the Commonwealth of the right of entry and of proceeding with the proposed works.

Now it is unquestioned before us that the general eminent domain statute of the State, applicable to railroad and other corporations possessing the power of eminent domain, fully complies with the constitutional requirement aforesaid, both in its provisions for the payment of the compensation awarded by the Commissioners first appointed, and for the payment of any subsequently awarded compensation. And we are not aware that the constitutionality of that statute has ever been doubted touching either of the particulars just mentioned, although it has been upon the statute books in practically the same terms in so far as such particulars are concerned for a great number of years, except that subsection 27 of the statute contained in the Code of 1904, section 1105f is a later addition to the statute. See Code 1849, chap. 56, sections 11, 12, 13, 14, 15.

The only difference between the two statutes is the following. There is a difference between the time of the pass-

ing of the title to the property and rights condemned under the statute involved in the case before us, from such time under the general eminent domain statute.   Under the latter the title does not pass until there is a confirmation of a report of commissioners (either of the first or subsequently appointed commissioners), followed by payment of the compensation awarded thereby; and the first report must lie in the clerk's office for the period prescribed by the statute before it can be confirmed by the court.   Whereas under the statute in question before us the report of the commissioners or viewers first appointed is made an award which becomes effective upon the filing of the report, without any need of confirmation by the court.   Indeed the court, by the express terms of this statute, has no jurisdiction of the subject of the amount of the compensation awarded by such commissioners unless there be exception to the report. Hence the procedure by way of exception to the report is characterized by the statute as an "appeal from or review of said report."   But the statute, in effect, provides that upon exception to the report the subsequent procedure on the subject of fixing the compensation shall be the same as that provided for in the general eminent domain statute aforesaid—"and that the rights of all persons affected shall be subject to the general laws of this State in so far as the same may be applicable under the general purposes of this act * * *"   Hence upon such exception the court (or judge in vacation, per amendment Acts 1914, p. 525), upon good cause being shown against the report, "may, without further notice, as often as seems to it or him proper, appoint other commissioners and the matter be proceeded in as before prescribed."   Code 1919, section 4370.   And the statute in question before us, is the same, in substance, as the provision of the general eminent domain statute in the particular now to be mentioned, namely; it provides that the condemnor, on paying into court the compensation as-

certained by the report of the commissioners first appointed, may, notwithstanding the pending of subsequent proceedings, enter upon such construction and use of the property and rights condemned as may be authorized (described) in the previous report. Code 1919, section 4371. This is so under the general eminent domain statute, although the title to the property and rights condemned has not then passed. So that the difference in the time of the passing of such title above referred to under the different statutes mentioned does not make the two statutes different in the particular of their allowing entry prior to the ultimate fixing of the amount of the compensation and the possible infliction of injury and damage pending the proceedings.

There are the further provisions in the general eminent domain statute, which have been in existence for many years and which are as follows:

"When, after such payment into court, a report is made which is confirmed, if the sum thereby ascertained exceed what was so paid, judgment shall be given against the company for the amount of such excess, with legal interest thereon from the date of the award until payment thereof, either into court or to the party entitled thereto." Code 1919, section 4372. See Code 1849, chap. 56, section 14 for the provision on this subject as it then stood in the statute.

"The company, when such judgment is rendered against it, shall thereafter have no right to possession of the land until the judgment is satisfied * * *" Code 1919, section 4373. See Code 1849, chap. 56, section 15.

"If, in any proceeding under the provisions of this act, * * * the amount or amounts ascertained by the commissioners as aforesaid, be not paid either to the party entitled thereto, or into court, within three months from the date of the filing of the report of the commissioner, the proceedings shall *ipso facto* be vacated and dismissed." Code 1904, section 1105f, sub. sec. 27. (By subsequent amendment the

condemnor or condemnee is required to move for the vacation and dismissal of the proceedings. Code 1919, section 4387.)

The provisions of the general eminent domain statute just quoted, not having been altered by the statute involved in the case before us, are, by the terms of the latter statute, incorporated into it, *mutatis mutandis*. Such statute therefore in substance and effect provides that the Commonwealth of Virginia is chargeable with whatever compensation may be allowed in subsequent proceedings in excess of that awarded by the report of the commissioners first appointed and prepaid as aforesaid; and the final judgment provided for in the statute, if for any such excess, would be against the Highway Commissioner in his official capacity and would thus fix the amount with which the Commonwealth would be chargeable on that account. Moreover there are the further provisions last quoted, one of which takes away from the Commonwealth the right to the possession of the land, pending the payment of such final judgment, notwithstanding that the title has previously passed, and the other of which vacates the condemnation proceeding and thereby reinvests the property owner with his title, if such final judgment be not paid within three months from the filing of the report on which it is based.

We are of opinion that such provisions give the property owner in effect as reasonably certain and ample provision for the payment of that portion of the compensation which may be allowed him in the subsequent proceedings aforesaid in excess of the amount of compensation which is required to be prepaid, as aforesaid, as if the title aforesaid did not pass until such final judgment.

Hence, there is, in our opinion, no substantial difference between the statute in question before us and the general eminent domain statute in their provisions affording security to the property owner for the payment of all of the

compensation which is guaranteed by the Constitution as aforesaid.   They both contain substantially the same provisions to insure and they alike insure the payment of such compensation with reasonable certainty and without unnecessary or unreasonable delay, in all cases where private property is in fact taken or damaged for public uses under the authority of such statutes.

Where the taking or damaging is for a public use, such is the test of the validity of a condemnation statute, as appears from the authorities.   And all of those cited and relied on by the defendant in error which are in point are in their holding in accord with this view.

The authorities cited and relied on by the defendant in error are the following:   *Tuckahoe Canal Co.* v. *Tuckahoe R. Co.,* 11 Leigh (38 Va.) 42, 77-8, 36 Am. Dec. 374; *Southwestern Ry. Co.* v. *Southern,etc., Tel. Co.,* 46 Ga. 43, 12 Am. Rep. 585; *State* v. *Lyle,* 100 N. C. 497, 6 S. E. 379; *State* v. *Jones,* 139 N. C. 613, 52 S. E. 240, 2 L. R. A. (N. S.) 315; *Litchfield* v. *Bond,* 186 N. Y. 66, 78 N. E. 724; *Bent* v. *Emery,* 173 Mass. 495, 53 N. E. 910; *Sweet* v. *Rechel,* 159 U. S. 380, 16 Sup. Ct. 43, 40 L. Ed. 188; 15 Cyc. 641-2; 2 Lewis on Em. Dom. (3rd ed.) section 673, and also p. 1165, which is section 456 of the second edition of this work; *State* v. *Wiethaupt,* 231 Mo. 449, 133 S. W. 329; *Cherokee Nation* v. *Southern Kansas Ry. Co.,* 135 U. S. 641, 659, 10 Sup. Ct. 965, 34 L. Ed. 295; and *Painter* v. *St. Clair,* 98 Va. 85, 34 S. E. 989.

There are statements in some of these authorities to the effect that the statute to be valid must "provide the indemnity," (*Tuckahoe Canal Co. Case, supra*); "must not only provide for the payment of compensation but also make provision for a certain and adequate remedy by which the owner of the property may procure the compensation," (15 Cyc. 641-2); must make "adequate provision * * * for compensation in the same or some other statute," (2 Lewis

on Em. Dom. (3rd ed.) section 673) ; must provide for "reasonably certain and adequate provision for obtaining compensation before the occupancy is disturbed" (*Cherokee Nation Case, supra*) ; must make "some definite provision whereby the owner will certainly obtain compensation" (2 Lewis on Em. Dom. (3rd ed.) p. 1162, citing among others the *Tuckahoe Canal Co. Case, supra*). But it is apparent from an examination of the cases above mentioned and from such of the cases as we have had access to which are cited by the text writers mentioned, that the language above quoted is used, in each instance, in reference to compensation permitted by the statute to be ascertained and paid after the entry and the construction of the proposed works. Moreover we find nothing in the language itself or in the decisions which support it, that indicates that it is meant thereby that the statute must contain any other provisions than are contained in the statute in question before us.

Further :

The *Tuckahoe Canal Co. Case*, 11 Leigh (38 Va.) 42, 36 Am. Dec. 374, held a statute valid, which authorized the entry by a railroad company and construction of the works before any ascertainment or payment of any compensation (the ascertainment and payment to be made afterwards), and provided for no security whatever for such payment except a judgment against the railroad company.

In the *Southwestern R. Co. v. Southern, etc., Tel. Co. Case*, 46 Ga. 43, 12 Am. Rep. 585, the statute was held invalid, because it provided merely for an arbitration of the amount of the compensation after the entry and construction of the works, and did not give the award the effect of a judgment. It was for the latter reason held to be invalid.

The *Lyle Case*, 100 N. C. 497, 6 S. E. 379, held a statute valid which authorized the entry of a municipality and the construction of the works before any ascertainment or pay-

ment of any compensation, but for such ascertainment and payment afterwards, although it contained no specific provision for laying a levy of a tax or making an appropriation of funds for the payment of the compensation or designating out of what fund it was to be paid or by whose check or draft or warrant or by what character of warrant. It merely provided a procedure for fixing the liability of the municipality which the statute provided "shall be paid as other town liabilities, by taxation."

The *Jones Case,* 139 N. C. 613, 52 S. E. 240, 2 L. R. A. (N. S.) 315, contains the same holding.

The *Rechel Case,* 159 U. S. 380, 16 Sup. Ct. 43, 40 L. Ed. 188, contains the same holding as to a statute allowing the city of Boston to take the property before ascertainment or payment of any compensation; only the statute involved contained no reference to the payment being by taxation and merely provided for a judgment against the city for the compensation as finally fixed and for execution on the judgment.

In *Litchfield* v. *Bond,* 186 N. Y. 66, 78 N. E. 724, the statute involved did not in definite terms authorize condemnation or definitely provide that any compensation should be paid, and was for these reasons held invalid.

In *Bent* v. *Emery,* 173 Mass. 495, 53 N. E. 910, the statute involved made no provision for payment of compensation before entry and was not definite in its provisions requiring such payment after entry. It was for the latter reason held to be invalid.

In *State* v. *Wiethaupt, supra,* 231 Mo. 449, 133 S. W. 329, the statute involved provided that the damages assessed by the commissioners first appointed must be paid or deposited in court before entry for the purposes of proceeding with the proposed works, and made no provision for security for any excess over such amount of compensation which might be eventually allowed on appeal, other than a judgment

therefor. And the court, in the discussion of that subject, expressed the view, in substance, that such a statute is valid, where the State or some subdivision thereof is the condemnor, but invalid where a private person is the condemnor. The case turns upon the holding that the statute involved in that case sought to authorize the taking of private property for *private* use, and that it was for that reason invalid.

It should be observed too, that in none of the authorities above mentioned does the statute involved, so far as we have been able to ascertain, contain the provisions, which are in the statute in question before us, for termination of the right of possession and for rescission and reinvestment of the title in the property owner in the event that the portion of the compensation which may be left unpaid upon the entry is not subsequently promptly paid as provided by the statute. These provisions of themselves assure reasonably certain payment of all of the just compensation guaranteed by the Constitution, without unnecessary or unreasonable delay.

In *Painter* v. *St. Clair, supra,* 98 Va. 85, 34 S. E. 989, this court, in its opinion delivered by Judge Keith, says: "The only limitation upon the power of the State in the exercise of the right of eminent domain being that just compensation must be made, we are of opinion that the act in question is not repugnant to the Constitution, for it does provide an adequate mode by which compensation to the citizen for the property taken is to be ascertained." This language has reference to the ascertainment and not the payment of the compensation, and, in truth, is not in point; but it is quoted in the brief for the defendant in error, and is relied on as sustaining his position that the statute in the case before us does not provide an adequate mode for the payment of the just compensation guaranteed by the Constitution. An examination of the statute (Acts 1897-8, p. 97, at p. 99, section 9), involved in the *Painter* v. *St. Clair*

*Case,* discloses that it provides for an initial assessment of the compensation to be made, by commissioners appointed as directed in the statute, and for an appeal from such assessment, and then enacts as follows: "Whether any such appeal be taken or not, the board of road commission for the district or districts in which such road shall be located, on paying into the court the sum ascertained by the commissions locating the same, as shown by their report returned to court, may, notwithstanding the pendency of proceedings, enter into and construct their work upon or through that part of the land described in such report." Then follow provisions for final judgment, and for termination of the right of possession until such judgment is paid—similar to the provisions on those subjects which are parts of the statute in question before us—with an absence, however, of any provision rescinding and reinvesting the title, such as is contained in the statute involved in the case before us. It was of such a statute that this court used the language quoted and relied on by the defendant in error as aforesaid—a statute in all essential particulars identical with that involved in this case in so far as the payment (and indeed ascertainment also) of damages is concerned; except that it is lacking in one important feature which is present in the statute before us, as aforesaid; and to say the least of the matter, we certainly find nothing in that case to the effect that the statute involved in the case before us is in any respect invalid.

In *Cherokee Nation* v. *Southern Kansas Ry. Co.,* 135 U. S. 641, 10 Sup. Ct. 965, 34 L. Ed. 295, the act of Congress involved provided that the compensation assessed by the referees must be paid before entry, and that if there was an appeal from the finding of the referees, the condemnor (a railroad company), should deposit in court double the amount of the assessment to abide its judgment, whereupon the condemnor might enter upon the property condemned

and proceed with the proposed works pending the appeal. There was an appeal in the case, and the question involved was whether the statute satisfied the Federal constitutional requirement as to making just compensation (which is the same in substance as that of the Virginia Constitution on the subject), as to the amount of damages which might be allowed on appeal in excess of the sum which was deposited in court. It was not even questioned that the statute was valid *quoad* the amount of the assessment of the referees, who performed the same function as the commissioners directed to be appointed by the statute involved in the case before us.

As to the sufficiency of the act of Congress to satisfy the constitutional guaranty as to the possible excess amount of compensation which might be allowed by the court on appeal over and above the amount assessed by the referees the Supreme Court said: "This question would be more embarrassing than it is, if, by the terms of the act of Congress, the title to the property appropriated passed from the owner to the defendant, when the latter—having made the required deposit in court—is authorized to enter upon the land, pending the appeal, and proceed in the construction of its road. But clearly, the title does not pass until compensation is actually made to the owner. Within the meaning of the Constitution, the property, although entered upon, pending the appeal, is not taken until the compensation is ascertained in some legal mode, and, being paid, the title passes to the owner. * * * In the case now before us the property in respect to which the referees made the award will be conditionally appropriated for the public use when the defendant makes a deposit in court of double the amount of such award, and it only remains to fix the just compensation to be made to the owner. But the title has not passed, and will not pass, until the plaintiff recovers the compensation ultimately fixed by the trial *de novo* provided for in the

statute. So that, if the result of that trial should be a judgment in its favor in excess of the amount paid into the court, the defendant must pay off the judgment before it can acquire the title to the property entered upon, and failing to pay it within a reasonable time after the compensation is finally determined, it will become a trespasser, and liable to be proceeded against as such. And, in such case, if the plaintiff shall sustain damages by reason of the use of its property by the defendant pending the appeal, the latter will be liable therefor. The apprehension, therefore, that the plaintiff may lose its property without receiving just compensation therefor, is without foundation.

"Some stress is laid upon the possibility that the defendant may become insolvent before the proceedings below reach a conclusion and become unable to pay any damages in excess of the amount it may pay into court. The possibility of such insolvency is not, in our opinion, a sufficient ground for holding that the provision made in the act of Congress for securing just compensation is inadequate. Absolute certainty in such matters is impracticable and therefore cannot reasonably be required. In determining the validity of the act of Congress the presumption must be indulged that a deposit in court of double the amount awarded by three disinterested referees appointed by the President, will amply secure the payment of any compensation that may be fixed at the trial in the court below."

As we have seen, the statute in question before us is different in its provision as to the time of the passing of the title from the act of Congress involved in the *Cherokee Nation Case,* so that the precise reasoning of the Supreme Court in that case is not applicable, yet, as we have also seen, there are other provisions of the statute we have under consideration which in effect provide substantially the same security to the property owner for the payment of the unpaid compensation as would have been afforded by the re-

tention of title in the property owner, as was the situation dealt with by the court in the *Cherokee Nation Case.* Although under the statute in question before us the title passes before all the compensation is paid, it passes conditionally only, and if the final judgment aforesaid is not promptly paid as aforesaid, the owner is reinvested with the title and he does not lose his property. Hence that decision in principle sustains the validity of the statute involved in the case before us.

With respect to what is said in the *Cherokee Nation Case* on the subject of the need of provision against the possible insolvency of the condemnor: There a railroad company was the condemnor. Manifestly the same need is not present where a State is the condemnor, as in the case before us. So that what is said in that case on this subject has but little application to the one before us.

Moreover, as we have seen, the statute drawn in question before us contains the other provisions aforesaid, namely, for final judgment, for termination of the right of possession, and for rescission and reinvestment of the title in the property owner, which result in making substantially the same provision against the insolvency of the Commonwealth which the general eminent domain statute makes against railroad and other companies exercising the right of eminent domain. No such company is required to deposit in court or to provide in advance for the getting in hand of the ready money with which to promptly satisfy the final judgment of the court in condemnation proceedings in excess of the amount prepaid before entry. It has been considered that the provisions of the statute aforesaid as to final judgment, as to termination of the right of possession and as to rescission of title and reinvestment of same in the property owner, are ample to secure the latter reasonably certain and prompt payment of the compensation in question even when the condemnor is a railroad or other

public service corporation. *A fortiori* is this true we think, where the condemnor is a sovereign and solvent State, with its good faith involved and with all of the resources which it possesses with which to meet its liabilities of every character.

We are, therefore, of opinion that the statute involved in this case, in its provision for the payment of all compensation to which the defendant in error may be entitled, fully complies with the guaranty or requirement of section 58 of the Constitution, and that the court below was in error in not appointing the commissioners and in its action in dismissing the case.

[9, 10] 4. We come now to consider the question which arises on the assignment of cross-error, and that is, whether the statute involved denies the right of appeal to this court?

The position taken in the brief and in oral argument for the defendant in error on this point is that the statute, by implication, denies the right of appeal to this court on the question of the amount of the compensation. The brief for the defendant in error says: "The statute expressly authorizing an appeal to be taken to the *circuit court* from the findings of the viewers clearly implied that the decision of the circuit court was final on that subject."

There is, under the Constitution and general statute law on the subject, a right of appeal in such a case on the question of compensation, as it concerns a "roadway," and is a judicial question. (See Constitution of Virginia, 1902, section 88, and the statute, Code 1919, section 6336, putting such constitutional provision into effect.) But since every presumption is in favor of the constitutionality of a statute, the statute under consideration could not be held to violate the constitutional provision on the subject, by its denial of such right of appeal by implication, unless it were a necessary implication.

The condemnation statute involved in this case expressly

29

provides that "the right of appeal or review" of the report of the commissioners, "on exception thereto, is hereby given to the property owner or to the commission *to the circuit court* on the question only of damages or compensation." (Italics supplied).

As aforesaid, the statute gives to the report of the commissioners first appointed the effect of an award as of the time of the filing of the report. That award is conclusive unless excepted to. It needs no confirmation by the court to render it effective. The language last quoted concerns only the jurisdiction of the circuit court upon its consideration of exceptions to the report of the commissioners. It merely attempts to withhold from the circuit court jurisdiction, on the hearing on such exceptions, of any question other than that of "damages or compensation." It submits the review of that question as a judical question to the decision of the circuit court upon exceptions to the report of the commissioners. It does not purport or attempt in any way to deal with the right of appeal to this court from the decision of the circuit court on the subject of "damages or compensation," but leaves that wholly unaffected by such statute; and, hence, leaves it to be governed by the Constitution and general statute law aforesaid on the subject.

[11] There are some expressions in the brief for defendant in error which indirectly intimate that it is contended that the statute aforesaid is unconstitutional because of its attempted withdrawal from the circuit court of the consideration of all questions, except that of "damages or compensation," on the hearing on exceptions to the commissioners' report; and hence the withdrawal also from this court of the consideration of any other question on appeal from the circuit court. The only question which is suggested in argument as being thus in fact withdrawn from judicial review in the case before us, is the question of whether the use for which the alteration of the route of the road is

proposed to be made is a public use. Now it is true that whether a condemnation is for a public or a private use is a judicial question and is subject to review by the courts. *Miller* v. *Pulaski,* 109 Va. 137, 63 S. E. 880, 22 L. R. A. (N. S.) 55; *Zircle* v. *Southern Ry. Co.,* 102 Va. 17, 45 S. E. 802, 102 Am. St. Rep. 805. But no claim is made in the case before us that the proposed alteration of location of the road is for a private use. That the use is public is unquestioned. And the record before us does not present any other question as involved on the hearing in the court below on exceptions to the commissioners' report, except the question of "damages or compensation."

[12] The position is taken in argument for the defendant in error that the alteration of the location of the road was unnecessary and inexpedient. But the use being public, and the action of establishing the location having been strictly in accordance with the statutory authority (and it is not claimed in the case before us that all of this is not true) and the statute not submitting it to the courts as a judicial question, the necessity or expediency of the location is a legislative question, the decision of which, without judicial review, has been delegated to the State Highway Commission by the statute which we have under consideration. That a condemnation statute is not invalid merely because it delegates the decision as to location to ministerial agents, and forbids any judicial review of their action in such matter, is well settled by the authorities. *Wilburn* v. *Raines,* 111 Va. 334, 68 S. E. 993, and authorities therein cited on this point; also *Lake Bowling Alley* v. *Richmond,* 116 Va. 429, 82 S. E. 97. The principles on which these Virginia decisions rest are so fully set out therein that it is unnecessary for us to restate them here. We are asked to overrule these decisions on the point under consideration, but we have no disposition to do so. They are impregnably supported both on principle and by authority, and their holding just mentioned is fully approved by us.

Hence we find no merit in the cross-assignment of error.

[13] For the reasons above stated, however, the order of the court under review will be reversed, and the case will be remanded to the court below for the appointment of commissioners as prayed for in the petition of the State Highway Commissioner, and to be further proceeded with according to law in a manner not in conflict with the views expressed in this opinion.

*Reversed and remanded.*