# $\mathfrak{Staunton}$

EXPORT LEAF TOBACCO COMPANY V. CITY OF RICHMOND.

September 20, 1934.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and
Browning, JJ.

The opinion states the case.

*McGuire, Riely & Eggleston,* for the plaintiff in error.

*James E. Cannon,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

Plaintiff in error, plaintiff in the lower court, filed a notice of motion against the city of Richmond, in the hustings court, seeking the allowance of six per cent interest from the 23rd day of January, 1931, until paid, on the sum of $30,000, the amount awarded plaintiff as diminution in the market value of certain property of plaintiff, by reason of a change in the grade of Lombardy street, incident to the construction of an underpass of the R., F. & P. Railway Company at Lombardy street. The ultimate change in the grade resulted in a depression which left the floor of the warehouse of plaintiff more than eighteen feet above the new level of the street.

By stipulation of counsel the record displays the following:

"1. On the 23rd day of January, 1931, an order was entered in the Hustings Court of the city of Richmond in grading damage proceedings instituted by the city of Richmond against the Export Leaf Tobacco Company and

others, in accordance with sections 3036, 3037, 3038 and 3039 of the Code of Virginia (1930), awarding Export Leaf Tobacco Company the sum of $30,000 to cover the diminution in market value of certain property of that company on account of a change in the grade of Lombardy street at a point where the property of the Export Leaf Tobacco Company is located, and judgment was entered accordingly.

"2. On the 24th day of June, 1932, the city attorney of Richmond advised counsel for Export Leaf Tobacco Company that he was ready to pay the sum of $30,000 in satisfaction of the award and judgment, but the counsel for Export Leaf Tobacco Company claimed that interest should be paid on this amount from the date of the award, that is, January 23, 1931. The city attorney declined to make this payment, and action has been brought in the Hustings Court of the city of Richmond by Export Leaf Tobacco Company by notice of motion for judgment in the sum of $30,000 and interest thereon from January 23, 1931.

"3. It having been suggested that there is some question as to jurisdiction of the Hustings Court of the city of Richmond by reason of the fact that the term at which the award was made and judgment entered has ended, it is hereby agreed between the city of Richmond and Export Tobacco Company, through their attorneys, that the jurisdiction of the Hustings Court of the city of Richmond in this case will not be questioned, but, without regard thereto, all differences between them shall be referred and submitted to Hon. John L. Ingram, Judge of the Hustings Court of the city of Richmond, as an arbitrator, who shall consider and decide the same, as follows:

"Shall interest be paid upon the award of $30,000 and judgment therefor entered in the grading damage proceedings, above recited, on the 23rd day of January,

1931, and if so, at what rate and for what period and in what amount?

"The award of the arbitrator may be entered of record as a judgment in the Hustings Court of the city of Richmond and shall have the same effect as any other judgment of that court, and the award and judgment in pursuance thereof shall be appealable to the Supreme Court of Appeals of Virginia as are other judgments of the Hustings Court of the city of Richmond and other courts of record upon proper proceedings taken for the purpose.

"It is further agreed and stipulated, by and between the parties, that a copy of the order of January 23, 1931, shall be made a part of the record in this proceeding; that the work of grading Lombardy street was not commenced until August 30, 1932; and that prior to that time the said party of the first part was not interrupted in the use of any portion of its premises at the southeast intersection of Lombardy and Leigh streets."

The defendant now contends that the question of interest is *res judicata,* for the reason that the plaintiff at the time of the entry of the judgment accepted the award of damages without raising the question of interest, and therefore, it is now too late to claim interest. There is no merit in the contention. The defendant accepted without question the award of Judge Ingram allowing interest from August 30, 1932, until payment shall have been made of the judgment, and does not in this court assign as cross-error the allowance of interest.

When, pursuant to the provisions of section 3039, the judgment against the city was entered, the only question before the court was the amount of compensation to which the plaintiff was entitled. In our opinion that is the sole question now presented for our consideration.

At common law judgments do not bear interest. It is provided by statute, section 6259, that in any action, whether on contract or for tort, the *jury* may allow interest on the sum found, and if interest is not allowed,

then the sum found shall bear interest from the date of the judgment. It is further provided that in a suit in equity a decree for interest may be entered.

We have no difficulty in concluding that the allowance of interest in the case at bar is not affected by the statute. It is apparent that an award of compensation for grading damages is neither an action on a contract or for tort, nor a suit in equity. The allowance of compensation for property damaged by a municipality in the grading of its streets is governed by sections 3036 to 3039 of the Code. Strictly speaking, the decision of the trial court in the ascertainment of compensation to the owner for damage to his property is neither an award nor a judgment. It is only by virtue of section 3039 that the amount of compensation to which the property owner is entitled when ascertained shall have the effect of a judgment.

Prior to the Constitution of 1902 a property owner was not entitled to compensation for damages done to his property. Unless there was a taking of his property for public use, he was without recourse. Since the proclamation of the Constitution of 1902, a citizen whose property is damaged for a public use stands upon a parity with the citizen whose property is taken for a public use. Section 58 of the Constitution contains this prohibitory language: "It (the General Assembly) shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation."

We are not here concerned with a property owner whose property has been taken. Our concern is in the solution of the question: When has the owner whose property has been damaged received just compensation under the Constitution?

In our opinion the answer to the question is found in the decision of this court in *City of Richmond* v. *Goodwyn*, 132 Va. 442, 112 S. E. 787, 789. The chief distinction between the facts of that case and the facts of the

instant case is that the former involved the taking of property for public use. There it appears that the city instituted condemnation proceedings to acquire land for street purposes. The commissioners appointed by the hustings court to assess the value of the land to be taken filed a report on October 23, 1930, and no exception was taken to that report. No payment having been made, nor any deposit to cover the damages, within three months from the date on which the report was filed, counsel for the landowners, pursuant to section 4387 of the Code of 1919, moved to vacate the proceedings. The council of the city of Richmond thereupon adopted a resolution directing a deposit of the requisite funds to the credit of the court, and the deposit was made April 25, 1921. Thereafter, the city attorney requested the court to enter an order authorizing checks to be drawn in favor of the various landowners. After this had been done, Goodwyn, *et al,* moved the court for an allowance of interest at the rate of six per cent from the date on which the commissioners filed their report, October 23, 1921, until the day the funds were deposited in bank, April 25, 1921, and at the rate of three per cent from the latter date until payment. The hustings court, over the objection of the attorney for the city of Richmond, decided this question in favor of the landowners.

In the opinion, Judge West has ably discussed the law applicable to the various phases of the case at bar, and we quote at length from the opinion as follows:

"This brings us to the consideration of the remaining question to be disposed of, namely: Are the defendants in error entitled to any interest on the amounts awarded them as compensation for their lands, and if so, from what date? The authorities generally agree that interest, in a proper case, may be allowed upon amounts awarded property owners in condemnation cases, but there is much conflict among them as to when or the time from which it should be allowed; due in large meas-

ure to the fact that in some States the matter of allowing interest is regulated by statute.

"In Mills on Eminent Domain, section 175 (499), we find this: 'Interest should run from the time of the taking * * *. Interest will always run from the time of the demand. If the payment is delayed by litigation, interest should be allowed. * * * The court will always allow interest, unless a tender or deposit is made. * * * The right to use the land is not always equivalent to the interest, for the owner cannot dispose of his land or rent or improve it. * * * Delays in payment required interest to be paid; but where there is a delay of only two days between the award and the tender of the money, the interest will be disregarded by the courts.'

"In 2 Lewis on Eminent Domain, the author, at section 742 (499), states the law thus: 'In the absence of any statutory provisions controlling the subject, the rule in respect to interest must be derived from the constitutional provisions requiring just compensation to be made for the property taken. * * *

" 'Where damages are assessed for property to be afterwards taken, the award or verdict should bear interest from the time with reference to which the damages are estimated. * * * This point of time must necessarily be before the compensation can be paid. Between that time and the payment, the owner has only a qualified use of his property. He may use it as it is, but he cannot improve or sell it except subject to rights acquired by the condemnation. As his compensation is withheld from him, though necessarily, he should have an equivalent for such withholding and that, in law, is legal interest. This is just to the owner. * * * While the assessed value, if paid at the date taken for the assessment, might be just compensation, it certainly would not be, if payment be delayed, as might happen in many cases. * * * It is true, until the company (city) actually takes possession, at the end of the proceedings, the owner has

the legal right to possess and use the land. It cannot be assumed that the value of this legal right is equivalent to the interest on the assessed value of the land. His possession is precarious; he cannot safely improve; if he sows, he cannot be sure that he will reap. As he is not placed in this position by any act of his own, is not in as a wrongdoer, nor under any contract, there would be no justice in charging him with any assumed value of the use.' But see *State Highway Com'r* v. *Kreger*, 128 Va. 203, 211-12, 105 S. E. 217.

\* \* \* \* \* \* \* \*

"Chief Justice Winslow, in delivering the opinion of the Wisconsin Supreme Court in *Appleton Water Works Co.* v. *R. Com.*, 154 Wis. 121, 142 N. W. 476, 47 L. R. A. (N. S.) 770, Ann. Cas. 1915 B, 1160, says: 'Just compensation must mean fair and reasonable value at the time the property is taken; just compensation for the property presently taken must necessarily mean its present value presently paid; it cannot mean its present value to be paid two years in the future without interest.'

"Judge Caldwell, in delivering the opinion of the court in *Alloway* v. *Nashville*, 88 Tenn. 510, 13 S. W. 123, 8 L. R. A. 123, 128, states this to be the law: 'The jury allowed no interest. No instructions on that subject were given or requested; but after the verdict was returned, and before judgment was entered, Alloway and wife moved the court to add interest. This the court refused to do, and his action in that regard is now assigned as error. The statute authorizing the condemnation of private property for public use, and prescribing the mode of proceeding, is silent on this subject, and the General Statutes (*Id.*, section 2702), which enumerate instruments that bear interest as a matter of law, does not embrace a case like that before us. Nevertheless, we have no hesitation in holding, upon general principles,

that interest should have been allowed from the time of the appropriation of the property * * *.'

"The Virginia statute concerning the exercise of the power of eminent domain is silent on the question of interest, except when, after payment into court, a report is made which is confirmed, and the sum thereby ascertained exceeds what was so paid, it is provided that the condemning party shall pay interest on such excess from the date of the award until payment thereof into court or to the party entitled thereto.

\* \* \* \* \* \* \* \*

"While this court has been called upon in numerous cases to pass upon questions arising in condemnation proceedings, yet in only one instance has it had occasion to consider the question of the allowance of interest upon the amounts awarded as compensation, except where there were two commissioners' reports, that being the case of *Attorney General* v. *Turpin*, 3 Hen. & Mun. (13 Va.) 549.

"This case, decided in 1809, involved the securing of the title to the land on which a part of the Capitol Square at Richmond is located. The legislature passed an act in 1779 providing that six certain squares situated in the town of Richmond, the property of Doctor Philip Turpin, be appropriated to the use and purpose of public buildings, and that reasonable satisfaction be paid for all such lots of ground as might be taken and appropriated for that purpose. The act further provided for the summoning of a jury to assess the value of the land taken. In December, 1787, the General Assembly passed an act authorizing the directors of the public buildings in the city of Richmond to convey to P. Turpin certain lands, the act reciting that the directors of the public buildings had appropriated, for the use of the public, certain lands, the property of said Turpin, since found to be unnecessary for the said purposes, and

authorizing them to execute a deed conveying to said Turpin so much of the land so appropriated as said directors should judge unnecessary for public use. And it was further provided that the directors should cause the lands deemed unnecessary for public use to be valued by a jury, previous to the execution of a deed for same. On April 9, 1788, the directors passed a resolution declaring that a deed ought to be executed to Philip Turpin, conveying to him all the lands belonging to said Turpin, appropriated by the directors for the use of the public, except two acres.

"Each of the three judges—Tucker, Roane and Fleming—wrote an opinion in the case, and Judge Fleming filed, as a part of his opinion, a decree which was agreed upon as the unanimous opinion of the court. This decree ordered that the Commonwealth pay the appellee, Turpin, the value of said two acres, with interest thereon at the rate of five per centum per annum from the 9th day of April, 1788, the date of the resolution of the directors, by which the two acres were retained for public use, until the same was paid.

"There was not, as suggested by counsel for the plaintiff in error, a revaluation of the land finally taken by the State, but simply a revaluation of that portion which was deeded back to Doctor Turpin, in order to ascertain the original value of the two acres retained by the State.

"Whether interest on the award should be allowed must depend upon the construction of the local statute, in the light of the constitutional provision that private property shall not be taken for public use without just compensation, the report of the commissioners and all the facts and circumstances surrounding the case.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"The commissioners, in fixing such compensation, are presumed to have allowed for the inconveniences, damage and delay arising out of the proceedings, cer-

tainly to the date of the filing of their report, and for three months thereafter, as the statute contemplates that the party condemning may have not to exceed three months, in which to decide whether he will take the property at the valuation fixed by the commissioners, after which, if the amount ascertained has not been paid, the proceedings shall, on motion of the condemnor or either defendant, be dismissed. But, the condemnor has no right to wait an indefinite time thereafter, and then come forward and take the property at that valuation, without the payment of interest thereon. To permit him to do so would be to require the landowner to surrender his property without receiving therefor that just compensation which the Virginia statute contemplates he should receive."

Our conclusion, therefore, is that under the constitutional provision allowing just compensation to a property owner whose property has been damaged for public uses in a grade proceeding, the right to the award begins as soon as the grade is established pursuant to the statute, and the award having the effect of a judgment under the provisions of section 3039, it bears interest from the date the award becomes final.

The judgment of the lower court will be reversed and judgment will be entered here, allowing six per cent interest on the sum of $30,000, the amount awarded the Export Leaf Tobacco Company, from the 23rd day of January, 1931, until paid.

*Reversed.*